**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
**LONE STAR HOME HEATING, INC., LS HOME**
**SERVICES, INC., ASSURED MECHANICAL CORP.,**
**HEATSERVE CORP, JOHN LaCERTOSA, Sr.,**
 **Individually,**

|  |  |
|---|---|
| **Plaintiffs,** | **AMENDED CIVIL RICO COMPLAINT PURSUANT TO 18 U.S.C. § 1961-§ 1964** |
|  | **Index No.: 10 civ 1984 (SLT)** |
| -against- |  |

**BLACKMAN PLUMBING SUPPLY CO., INC.,**
**RICHARD BLACKMAN, ISLANDWIDE RECEIVABLES,**
**INC., MICHAEL SHIRANO, PAUL BEDFORD, F.D.R.P.,**
**INC. , F.V.A., INC., CONFLICT ECONOMICS, INC.,**
**SUNDACK C.P.A., P.C., STEVEN SUNDACK and JON**
**SUNDACK**

**Defendants,**

------------------------------------------------------------------------x

Comes now the above named Plaintiffs, complaining of the defendants, by and through their attorney, RICHARD D. BORZOUYE, ESQ., upon information and belief, allege the following:

### Jurisdiction

1.      Federal subject matter jurisdiction is conferred in this action pursuant to 18 U.S.C. 1964 (c) and 28 U.S.C. 1331, which creates a civil action in violation of the Racketeered Influenced & Corrupt Organizations Act (RICO).

### The Parties

 2. Upon information and belief, plaintiff JOHN LaCERTOSA (hereinafter referred to as "LaCERTOSA") was, at all times referred to herein, and is a resident of the County of Queens, State of

New York.

3. Upon information and belief, plaintiff LS HOME SERVICES, INC. (hereinafter referred to as "LS"), was, at all times referred to herein, and is a corporation duly organized and  existing under and by virtue of the laws of the State of New York, engaged in or affecting interstate or foreign commerce, of which LaCERTOSA was and is the sole shareholder.

4. Upon information and belief, at all times mentioned herein, plaintiff LONE STAR HOME HEATING, INC. (hereinafter referred to as "LONE STAR"), was, at all times referred to herein, and is a corporation duly organized and existing under and by virtue of the laws of the State of New York, engaged in or affecting interstate or foreign commerce, of which LaCERTOSA was and is the sole shareholder.

5. Upon information and belief, at all times mentioned herein, plaintiff ASSURED MECHANICAL SERVICE CORP. was, but is no longer, a corporation duly organized and existing under and by virtue of the laws of the State of New York, engaged in or affecting interstate or foreign commerce, of which LaCERTOSA was the sole shareholder.

6. Upon information and belief, at all times mentioned herein, plaintiff HEATSERVE CORP. (hereinafter referred to as "HEATSERVE"), was, at all times referred to herein, and is a corporation duly organized and existing under and by virtue of the laws of the State of New York, engaged in or affecting interstate or foreign commerce, of which LaCERTOSA was and is the sole shareholder.

7. Upon information and belief, at all times mentioned herein, defendant BLACKMAN PLUMBING SUPPLY CO. INC. (hereinafter referred to as "BLACKMAN INC."), was and is a corporation with its principal place of business in the County of Suffolk, State of New York.  At the time that LaCertosa transacted business with Blackman, Inc. it's principal place of business was located in Bethpage, Nassau County, in the State of New York.

8. Upon information and belief, at all times mentioned herein, BLACKMAN INC. owned, controlled, maintained, managed and operated the premises located at 134-07 Northern Boulevard, Flushing, New York 11354, at which it operated a plumbing supply business.

9. Upon information and belief, at all times mentioned herein, defendant RICHARD BLACKMAN (hereinafter referred to as "MR. BLACKMAN") was the sole or principal shareholder and Chairman & Chief Executive officer of BLACKMAN INC.

10. Upon information and belief, at all times mentioned herein, defendant ISLANDWIDE RECEIVABLES, INC. was and is a New York domestic corporation owned by or affiliated with BLACKMAN INC.  Herein referred to as "ISLANDWIDE".

11. Upon information and belief, at all times mentioned herein, defendant MICHAEL SCHIRANO (hereinafter referred to as "SCHIRANO") was and is the "credit manager" for BLACKMAN INC.

12. Upon information and belief, at all times mentioned herein, defendant PAUL BEDFORD (hereinafter referred to as "BEDFORD") was and is an individual who was represented by SCHIRANO to be experienced in financial matters "like a financial guy" and a "business growth turnaround expert," "banking expert" and "author of newsletters within the banking industry" and who has worked with other BLACKMAN, INC. customers allegedly growing their business in the past which Bedford's principal place of business is in the State of North Carolina.

13. Upon information and belief, at all times mentioned herein, defendant STEVEN SUNDACK (hereinafter referred to as "SUNDACK") was and is a certified public accountant who was represented and introduced to LaCertosa by BEDFORD, with his principal place of business in the County of Suffolk, State of New York.

14. Upon information and belief, at all times mentioned herein, defendant JON SUNDACK, was and is a certified public accountant, who was represented and introduced to LaCertosa by BEDFORD, with his principal place of business in the County of Suffolk, State of New York.

15. Upon information and belief, at all times mentioned herein, defendant SUNDACK CPA P.C., was and is a professional service corporation engaged in the practice of accountancy which was represented and introduced to LaCertosa by BEDFORD and retained by LaCertosa his business entities.

**Statement of Facts regarding the "Blackman Enterprise" and Predicate Acts constituting a Pattern of Racketeering Activity in collection of an Unlawful Debt in violation of 18 U.S.C. 1962 (a), (b), (c), & (d).**

16.. Plaintiffs repeat the averments of paragraphs 1-16, inclusive, hereof with the same force and effect as though set forth at length herein.

17. LaCERTOSA has been in the business of gas heating, service, repair and installation, originally through LONE STAR, for more than eighteen years. Beginning in approximately 1992, LONE STAR established a business relationship with BLACKMAN INC., one of the largest plumbing supply companies in the United States engaged in the wholesale distribution of gas heating equipment, including, but not limited to, boilers and hot water heaters, and thereafter purchased nearly all of its boilers and hot water heaters solely from BLACKMAN INC. For approximately fifteen years, LaCERTOSA (through LONE STAR) has been permitted to purchase plumbing supplies from BLACKMAN INC. on credit. On or about September 30, 2006, LONE STAR had grown its credit line with BLACKMAN INC. to nearly $25,000. BLACKMAN INC., through its credit manager, SCHIRANO, caused LONE STAR to hire BEDFORD, purportedly to assist it in improving and expanding its business. BEDFORD was represented by SCHIRANO to LaCERTOSA as a "like a financial guy", "business growth turnaround expert," "banking expert" and "author of newsletters within the banking industry."  As of October 31st, 2007, LONE STAR's credit line of $25,000.00 with BLACKMAN INC. was paid down by LACERTOSA to $15,874.85 while BLACKMAN INC.'s statement respective to October 31st, 2007 requested payment of $25,781.22, for which plaintiff's have retained. BLACKMAN INC.'s monthly statements being inconsistent for LONE STAR respective to LACERTOSA's payments issued to BLACKMAN INC. resulted in but not limited to BLACKMAN INC. not listing LACERTOSA's payments on any of BLACKMAN INC.'s monthly statements. LACERTOSA used a BLACKMAN INC. statement of May 31st, 2007 and listed each payment issued to BLACKMAN INC. reducing the LONE STAR balance respective to each payment. While LACERTOSA was making payments through October 17th, 2007 totaling$12,500.00 to pay down the LONE STAR balance with BLACKMAN INC., LACERTOSA was also actively purchasing all equipment on a C.O.D. basis totaling approximately $120,013.60 in addition to paying the remaining entire LONE STAR credit account balance due, BLACKMAN, INC. of $15, 874.85 as of October 15, 2008. However, BLACKMAN INC. continued to send, through the U.S. Postal Service, frivolous

monthly statements to LACERTOSA up until October 31st, 2009 consisting of 4 C.O.D. invoices: Invoice #4397074 paid on 11/14/07, Invoice #4403286 paid on 11/16/07, Invoice #4392066 paid on 11/12/07, and Invoice #4407685 paid on 11/19/07.

18.  On or about November 7th, 2007, BLACKMAN INC., through its credit manager SCHIRANO, caused LONE STAR to hire BEDFORD. BEDFORD was represented by SCHIRANO to LACERTOSA as a "financial guy like an accountant," "business growth turnaround expert," "banking expert," "author of newsletters within the banking industry," who was familiar with LACERTOSA'S type of business, who was filled in by SCHIRANO, and who SCHIRANO arranged for BEDFORD to expect a call from LACERTOSA the following morning between 6 a.m. and 7 am. In addition to prior promotion of BEDFORD by SCHIRANO, SCHIRANO's instigation for LACERTOSA to hire BEDFORD is evidenced by the handwritten phone message forwarded to LACERTOSA by LACERTOSA's office assistant  and a typed transcript of a voice mail message retrieved by LACERTOSA's office assistant which was also forwarded to LACERTOSA by his office assistant on November 7th, 2007.

19. On or about Thursday, November 8th, 2007, at or about 7 a.m. LACERTOSA called BEDFORD under the specific instructions of SCHIRANO. SCHIRANO provided LACERTOSA with BEDFORD's phone number in North Carolina, (704) 763-9140. At the time of LACERTOSA's initial call to BEDFORD, LACERTOSA had never known or heard of anyone by the name of Paul Bedford. During an approximate hour and a half phone conversation BEDFORD advised LACERTOSA to expect a call from Steven Sundack of SUNDACK C.P.A. who Bedford described as the accountant member of BEDFORD's "business growth turnaround" team for the past 20 years and that SUNDACK will schedule to meet with LACERTOSA to review LACERTOSA's business and personal affairs and SUNDACK will report back to BEDFORD. On the same day November 8th, 2007 at or about 2 pm. LACERTOSA received a call from SUNDACK and SUNDACK scheduled to meet with LACERTOSA two days later, Saturday November 10th, 2007. The meeting took place at LACERTOSA's home. At the time, LACERTOSA had never heard or known of anyone by the name of Steven Sundack, Jon Sundack, or the accounting firm, SUNDACK C.P.A. At that meeting, SUNDACK confirmed his role to LACERTOSA as related to BEDFORD in the exact same description as BEDFORD had described to LACERTOSA. Evidence of LACERTOSA's conversation with BEDFORD on Thursday November 8th, 2007, and LACERTOSA's Saturday November 10th, 2007 meeting with SUNDACK as well as BEDFORD and SUNDACK working together is evidenced in a

fax communication from BEDFORD to LACERTOSA dated November 10th, 2007.

20. At the time, SCHIRANO strongly urged LaCERTOSA to hire BEDFORD, which BEDFORD then introduced SUNDACK. LONE STAR had exhausted its line of credit with BLACKMAN INC. and was paying for goods on a Cash on Delivery (C.O.D).basis. BEDFORD strongly urged and in fact did reorganize LONE STAR, which BEDFORD, in coordination with BLACKMAN, INC., SCHIRANO and SUNDACK resulted in the creation of a new corporation, LS.

21. On or about November 11th, 2007, BEDFORD sent LACERTOSA a fax communication again confirming the conversation on Saturday November 10th, 2007 between BEDFORD, SUNDACK, and LACERTOSA. In the same fax, BEFORD submitted to LACERTOSA a list of names to choose for the new corporation. Also in the same fax, BEDFORD confirms that he "will prepare all documentation with regard to the formation of the new corporation." This overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit in violation of 18 U.S.C. § 1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343, Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

22. On or about November 16th, 2007, BEDFORD together with SUNDACK, and in coordination with SCHIRANO and BLACKMAN INC. reorganized LONE STAR which is confirmed by a fax communication from BEDFORD dated November 18th, 2007. For reasons BEDFORD never clearly explained to LACERTOSA, BEDFORD instructed  LACERTOSA that LACERTOSA can no longer make any payments to BLACKMAN from the LONE STAR HOME HEATING INC. account at Bank

of America, account number 009405149912 which was LACERTOSA's one and only bank account at the time which LACERTOSA had been using to pay BLACKMAN INC. for the past 15 years. This is confirmed in a fax communication of November 18th, 2007 paragraph 5. Soon after LACERTOSA closed the LONE STAR bank account on the instructions of BEDFORD. This overt criminal act by BEDFORD constitutes wire fraud in violation of 18 U.S.C. § 1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343, Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

23. On or about November 19th, 2007, BEDFORD informed LACERTOSA that the LS account was opened by BLACKMAN INC. at BLACKMAN INC's "corporate headquarters in Bethpage (N.Y.)." One of the first results of BEFORD'S hiring and the reorganization upon which he insisted was to establish a line of credit with BLACKMAN INC. for the new corporations LS, which SCHIRANO facilitated at BLACKMAN INC's corporate headquarters in which SCHIRANO's participation in the reorganization for the new corporation LS is evidenced in paragraph three and four of the same fax communication of November 19th, 2007  in which BEDFORD states "I need the P.O. Box number A.S.A.P. in order for Mike Schirano to open the new account at Blackman." The establishment of LS's line of credit was an integral part of the plan of the BLACKMAN INC. enterprise consisting of the defendants (hereinafter sometimes referred to as the "Blackman Enterprise"),to create an indebtedness by LS to BLACKMAN INC. and divert assets of LS, LONE STAR, and LACERTOSA to BLACKMAN INC. for the benefit of BLACKMAN INC. Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1341 and constitutes a predicate act and a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever,

having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a  predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


24. As LaCERTOSA subsequently learned on or about March 9, 2008 through a communication sent to him, BEDFORD either established or was otherwise involved with three apparently unrelated entities, F.D.R.P. Incorporated (the letters standing for Fraud Detection and Recovery Project) F.V.A., Inc. (the letters standing for Fraud Victims Alliance) and Conflict Economics, Inc. In addition to his other advice to LaCERTOSA, hereinafter detailed, BEDFORD, on more than one occasion, counseled LaCERTOSA on methods of deceiving credit card issuers and banks, which BEDFORD called "Creative Banking," which was calculated by BEDFORD for the purpose of paying himself and diverting moneys to BLACKMAN INC. SCHIRANO and BEDFORD actively concealed from LONE STAR and LaCERTOSA the fact that BEDFORD was then an agent of and acting in the interest of BLACKMAN INC. in his dealings with LaCERTOSA. Evidence of BEDFORD's connection with BLACKMAN INC. exists in the following facts, among others: on March 31st, 2009 at 1:53 pm. as per a voice mail message certified by CBW Productions, LLC, a professional audio recording company, Bedford informed LACERTOSA that BLACKMAN INC. had already submitted the information concerning LS's indebtedness to BLACKMAN INC. to its attorneys, Weinstein & Associates to commence action against LS which is evidenced by a compact disc that LaCERTOSA hired CBW Productions to retrieve from his phone system and record, order #121973. In the same voice mail message, BEDFORD also stated to LACERTOSA that he could talk to Mike (SCHIRANO) in regards to the lawsuit but, LACERTOSA would have to call BEDFORD that day.

25.  In a fax communication of November 19th, 2007, paragraph 3, BEDFORD states that SCHIRANO is waiting for a P.O. Box number in order to open the new account at BLACKMAN INC. In the same fax communication, paragraph 4, BEDFORD acknowledges that he is aware that the "LS Home

account has been opened by Blackman corporate in Bethpage." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit in violation of 18 U.S.C. § 1343. 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

26.  In a fax communication of October 1st, 2008, paragraph 1, BEDFORD states as follows: "The Blackman weekly credit meeting is held every Wednesday morning."

27.  In a fax communication of December 19th, 2007, page 2 paragraph 2, BEDFORD states he spoke to SCHIRANO about a number of Blackman issues. The very first check issued to BLACKMAN INC. from LS on December 28th, 2007, was issued by LACERTOSA from a temporary check book in which LACERTOSA hand wrote the contact number for LS, (718)-866-7457 in the top left corner of the check. However, checks issued to BLACKMAN INC. after December 28th, 2007 actually show BEDFORD's phone number, (631) 561-5139, one of BEDFORD's many phone numbers, hand written on the checks as a contact number after LACERTOSA submitted the checks to BLACKMAN INC. BEDFORD'S phone number  (631) 561-5139 that appears handwritten on the checks issued to BLACKMAN INC. by LACERTOSA was not written on the checks by LACERTOSA at the time LACERTOSA submitted the checks to BLACKMAN INC. At sometime after LACERTOSA had already submitted the checks to BLACKMAN INC., BEDFORD'S phone number was written on the checks while in BLACKMAN INC.'s possession. BEDFORD'S phone number 631-561-5139 is one of BEDFORD's many phone numbers which also appears on BEDFORD's letterhead . The area code 631 relates to the county of Suffolk, in the State of New York which one can interpret as BEDFORD's location being in Suffolk County, New York. However, this contradicts BEDFORD's location which in actuality is in the state of North Carolina which is confirmed by the following: SCHIRANO's initial phone message obtained by LACERTOSA's office assistant where SCHIRANO provides BEDFORD's

phone number of 704-763-9140, the area code 704 being that of North Carolina, a fax communication of November 11th, 2007 where BEDFORD requests information from LACERTOSA and provides a fax number of 704-549-4089. In furtherance to BEDFORD's location being in the State of North Carolina and an attempt of misrepresentation of Bedford's location is evidenced in a fax communication of January 22nd, 2009 which shows BEDFORD's letterhead displaying a North Carolina address with a New York phone number but, with a North Carolina fax number. Further evidence of BEDFORD's location working from North Carolina is shown in a United States Postal Service Express Mail receipt sent to BEDFORD in North Carolina by LACERTOSA on September 5th, 2008. Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

28.  In furtherance to conspiracy the collusion between BLACKMAN INC., SCHIRANO, and BEDFORD, SCHIRANO and BLACKMAN INC. were well aware that BEDFORD was located in North Carolina. Yet, SCHIRANO and BLACKMAN INC. further knowingly deceived LACERTOSA by writing BEDFORD's Suffolk County, New York phone number on LACERTOSA's checks issued to BLACKMAN INC., instead of BEDFORD's North Carolina phone number for reasons of attempting to exempt themselves from a federal violation being that BEDFORD, in the State of North Carolina, was instructing LACERTOSA, in the State of New York, to make payments to BLACKMAN, INC., in the state of New York, while BLACKMAN INC. collected the monies issued by LACERTOSA under the instructions of BEDFORD while BLACKMAN INC. was running their scheme to defraud LACERTOSA with fraudulent BLACKMAN INC. monthly statements.

29. In a fax communication of June 10th, 2008 BEDFORD states "I talked to Mike Schirano this morning. He has big meeting with Richard Blackman and the "credit" gang later today." In reality, this

and all of BEDFORD's advice to LACERTOSA was intended to be and was in furtherance of
BEDFORD's conspiracy and collusion with BLACKMAN INC. and MR. BLACKMAN and their plan
for participation in and control and/or injure the business and property of LONE STAR, LS, and
LACERTOSA. Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire
fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. §1343 Fraud by
wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or
artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,
representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television
communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for
the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more
than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act
and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and
in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in
collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

30.  As per a fax communication of January 8th, 2008, BEDFORD informed LACERTOSA that
"Sundack should have the sales tax registration application for LS Home completed by the end of this
week." As a result of the conspiracy and intentional and fraudulent omission on the part of BEDFORD
and SUNDACK, LS could not acquire a sales tax certificate enabling LS to make sales at retail.
BEDFORD, in coordination and participation with SUNDACK contradicted the fax communication of
January 8th, 2008 which their failure is evidenced in the fax communication of March 18, 2008 which
BEDFORD states "Steve agrees with me that we are going to have the run (for the time being) all
taxable sales through Lone Star Home Heating, Inc.," the old corporation that BEDFORD and
SUNDACK supposedly shut down and even wrote to various agencies stating LONE STAR ceased
trading operation in December 2007 which is confirmed in a fax communication of September 9th,
2008, where BEDFORD writes on behalf of LACERTOSA to N.Y.S. Worker's Compensation Board.
Pursuant to a letter written by SUNDACK on behalf of LONE STAR on October 24, 2008,
SUNDACK advises the NYS Department of Labor that LONE STAR has ceased operating in
December of 2007. In addition, prior to this fax communication, sometime in January 2008,
BEDFORD instructed LACERTOSA to close the LONE STAR bank account therefore, on February
4th, 2008 LACERTOSA made a final deposit in the LONE STAR account to cover any outstanding
checks in order to close the account. Said fax was sent via wire and is an overt criminal act by
BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §

1343. 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

31. According to BEDFORD, for payroll purposes, BEDFORD unilaterally facilitated the incorporation of HEATSERVE on or about September 9th, 2008, which SUNDACK managed the payroll services through HEATSERVE for LS which is evidenced in a fax communication of September 30th, 2008, which BEDFORD further suggests in the same fax communication, page 2, to apply for a sales tax registration number for HEATSERVE. Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

32.  In order to gain LaCERTOSA's trust and employ him, BEDFORD, in pursuance of the goal of the "Blackman Enterprise", gave LaCERTOSA his assurances that he would resolve the matter of an

indebtedness of approximately $553,388.45 on the part of LaCERTOSA with respect to tax liabilities of Assured Mechanical, a New York domestic corporation, of which LaCERTOSA was the sole shareholder. BEDFORD in a verbal representation to LACERTOSA falsely stated that he would do so by hiring attorneys to represent LaCERTOSA in a suit against the accountants that formerly represented Assured Mechanical, who were responsible for the continued existence of the liability. In a fax communication sent from BEDFORD to LACERTOSA dated November 22nd, 2007, BEDFORD indicates to LACERTOSA his intentions to this respective matter which BEDFORD's intentions would come to be one of many acts of deception to mislead LACERTOSA to further gain LACERTOSA's trust and employ BEDFORD and SUNDACK. However, BEDFORD, acting in the interest of BLACKMAN INC., failed to take the promised action to clear up the tax obligations of Assured Mechanical, as well as other promises, including, but not limited to, delivering an infusion of growth capital through a network of investors. While employed by LS and acting in the interest of BLACKMAN INC., SUNDACK, whose hiring by LS and LACERTOSA as their accountant was facilitated by BEDFORD, failed in his professional responsibility to file required tax returns with the Internal Revenue Service and the New York State Department of Taxation and Finance and failed to provide LACERTOSA with a calculation of the total amount of taxes due thereon. BEDFORD's and SUNDACK's individual and coordinated acts of deception was all in the interest of maximizing the assets of LS, LONE STAR, and LACERTOSA to be available for the payments on the LS and LONE STAR account balances with BLACKMAN INC. which were all acts conducted during the period of BEDFORD's employment by LS and LACERTOSA and the continuation of the Blackman enterprise consisting of BLACKMAN INC., MR. BLACKMAN, SCHIRANO, BEDFORD, SUNDACK, and SUNDACK C.P.A., among others.  For the benefit of BLACKMAN INC., BEDFORD exercised favoritism when instructing LACERTOSA on the distribution of revenue by diverting most of all LS's incoming revenue primarily to BLACKMAN INC. for the benefit of BLACKMAN INC., having complete disregard for allocating revenue to pay accounts payable due on a fair and timely payment distribution basis. BEDFORD prioritized all incoming revenue for BLACKMAN INC. ahead of all other payable obligations including but not limited to paying taxes. BEDFORD's revenue distribution instructions to LACERTOSA was part of BEDFORD's deceptive "business growth turn around" plan whereby BEDFORD convinced LACERTOSA that it was paramount that BLACKMAN INC. was to be the accounts payable priority in order for BEDFORD to create a portfolio to present to his network of investors for the purpose of obtaining an infusion of growth capitol from his network of investors who BEDFORD said he counsels and who rely on BEDFORD's investment recommendations. SUNDACK's recklessness and negligence related to performing his accounting duties combined with

BEDFORD's recklessness and deceptive payment distribution methods caused damage to LS, LONE STAR, and LACERTOSA and all members of LACERTOSA's immediate family as well as the working members of LACERTOSA's company. The depletion of LACERTOSA's cash low was directly caused by BEDFORD's diversion of LACERTOSA's funds and LS's revenue for the benefit of BEDFORD and BLACKMAN INC. which resulted in damages to LACERTOSA, but was not limited to; LACERTOSA no longer being able to pay his monthly home mortgage, LACERTOSA no longer being able to make payments on his personal vehicle which was eventually repossessed, LACERTOSA no longer being able to process payroll service which has put LACERTOSA in debt to his employees for back wages, LACERTOSA being indebted to his "special needs" daughter for use of money from her bank account as well as use of LACERTOSA's wife's salary, LACERTOSA being in debt to the Worker's Compensation Board, LACERTOSA being in debt to his insurance company for unpaid liability which was canceled which resulted in the loss of use of company vehicles causing LACERTOSA increased operating cost by having to rely on the use of rental vehicles on a weekly basis, LACERTOSA loss of liability insurance has also exposed LACERTOSA to a liability lawsuit. Further to the damage caused by BEDFORD's diversion of LACERTOSA's funds, LACERTOSA has lost the services of his advertising agency which was a vital part of LACERTOSA's company's growth. As a result, the advertising agency (with whom LACERTOSA has maintained a consistent mutual advantageous business relationship with for approximately 10 years beginning at or about 1998) has severed their relationship with LACERTOSA thereby causing a loss of revenue for LACERTOSA respective to maintaining and increasing LACERTOSA's company's customer base. In addition to tax debt, the resulting damage amongst others caused by the "Blackman Enterprise" has created a business and personal debt to LACERTOSA in excess of approximately $1,911,341.30.

33. BEDFORD's instigation of the intended reorganization of LONE STAR as LS was allegedly intended by BEDFORD for the ostensible purpose of enabling LACERTOSA to increase his available credit and opportunities, but in reality, it was to give BLACKMAN INC. participation in and control of LACERTOSA's business and property. In fact, a result of the intended reorganization of LONE STAR was an establishment of credit by BLACKMAN INC. to LS and, therefore, resulting in an indebtedness to BLACKMAN INC., thereby paving the way for the effectuation of the aforesaid plan of the "Blackman Enterprise". However, because of the intentional and deceptive efforts of BEDFORD and SUNDACK, LS was never granted by the New York State Department of Taxation and Finance a tax certificate enabling LS to make sales at retail. As a result, all sales were continued to be made although LACERTOSA, resulting from the acts of BEDFORD and SUNDACK, had at the time been deprived of

effectuating sales in a method that would be in compliance with required business practices.

34. In further pursuance of BLACKMAN INC.'s plan to gain participation in and control of the business and property of LaCERTOSA, LONE STAR and LS in BLACKMAN INC.'s rather than the interest of LONE STAR, LS, or LaCERTOSA, BEDFORD introduced LaCERTOSA to SUNDACK and convinced LaCERTOSA to hire SUNDACK, JON SUNDACK and SUNDACK C.P.A., P.C., purportedly to enable LONE STAR, LS and LaCERTOSA to become better organized in their businesses. In reality, however, SUNDACK's insinuation into LaCERTOSA and his aforementioned companies was intended to result, and did result, in the diversion of cash and other assets to BLACKMAN. This was done through the acts, stratagems and artifices hereinafter set forth.

35. SUNDACK, upon being employed by LONE STAR, LS, and LaCERTOSA falsely represented that he would see to all of the required filing of tax returns and calculation of taxes to the Internal Revenue Service, the New York State Department of Taxation and Finance and any other New York State governmental entities to which taxes or payments constituting taxes would become due. To that end, BEDFORD and SUNDACK prevailed upon LaCERTOSA to execute on behalf of LONE STAR and LS, Powers of Attorney giving SUNDACK authority to do what he represented he would do on behalf of LONE STAR, LS and LaCERTOSA. While employed by LONE STAR, LS, and LaCERTOSA all tax and accounting matters relating to LS, LONE STAR and LaCERTOSA personally, were the sole responsibility of BEDFORD, SUNDACK, JON SUNDACK, and SUNDACK CPA. However, BEDFORD's communications to LaCERTOSA are replete with statements showing that his primary concern was satisfying BLACKMAN INC. and SCHIRANO and effecting payment by LONE STAR and LS to BLACKMAN INC. BEDFORD and SUNDACK worked in combination and concert with respect to the conduct of the tax and financial matters relating to LONE STAR, LS and LaCERTOSA . Resulting from the acts and omissions of BEDFORD and SUNDACK, the tax obligations of LONE STAR and LS, to which LaCERTOSA was exposed, increased from approximately $636,627.58 at the end of 2007  to approximately $1,285,676.83 the taxes allegedly owed presently, a difference of approximately $649,049.25. BEDFORD and SUNDACK represented that they would eliminate the tax liability of Assured Mechanical, of which LaCERTOSA was the sole shareholder, which became a personal liability of LaCERTOSA, which then stood at approximately $553,388.45. Not only did BEDFORD and SUNDACK fail to eliminate that liability but it increased during their employ to approximately $863,548.09. BEDFORD and SUNDACK made those representations solely to induce LaCERTOSA, LS, and LONE STAR to employ BEDFORD and SUNDACK without ever intending to

perform in accordance with their representations to LaCERTOSA. As stated, SUNDACK willfully
failed in regards to his accounting obligations to LONE STAR, LS, HEATSERVE, and LaCERTOSA
personally. On or about late 2009, through a verbal, in person communication when LaCERTOSA
went to SUNDACK's office in Commack, Suffolk County, New York to pick up documentation
respective to tax liabilities that SUNDACK still had in his possession, SUNDACK told LaCERTOSA
that reason why SUNDACK did not file any tax returns for LONE STAR, LS, HEATSERVE, and
LaCERTOSA personally was because there wasn't any money to pay the respective taxes due that
would be due had SUNDACK calculated the taxes.  SUNDACK's communication to LaCERTOSA
was "John, you have no money so, there's nothing we can do." As a result, respective to SUNDACK's
communication to LaCERTOSA, as of March 15, 2010, LaCERTOSA had an opportunity, provided by
the NYS Department of Taxation and Finance to save $591,649.87. However, due to the
Blackman Enterprise and pattern of racketeering activity and predicate acts and deceptive acts and
practices of BEDFORD and SUNDACK, LaCERTOSA could not execute this opportunity enabling
him to take advantage of the significant discount the NYS Department of Taxation and Finance offered
him. As a result of BEDFORD's and SUNDACK's conspiracy and intentional failure and scheme in not
resolving LaCERTOSA's, LS's, and LONE STAR's tax obligations, LaCERTOSA is now exposed to
tax liabilities totaling approximately $3,162,787.42. Further, after LaCERTOSA dismissed SUNDACK
as his accountant due to LaCERTOSA's information and belief that SUNDACK was in fact part of the
Blackman Enterprise, LaCERTOSA made two attempts by his own efforts to resolve his tax issues
whereby LaCERTOSA consulted with a C.P.A. Tax Auditing Firm and with a Tax Attorney firm which
both firms specialized in resolving tax issues. However, because of LaCERTOSA's depletion of funds
caused by the Blackman Enterprise and it's co-conspirators, LaCERTOSA did not have the funds
required to retain either one of the two firms.

36. BEDFORD's correspondence with LaCERTOSA during the course of his employment by LONE
STAR and LS reflects his inside knowledge of activity within BLACKMAN INC. and reflects as well
BEDFORD's greater concern with satisfying BLACKMAN INC.'s desires than with satisfying the
desires of LONE STAR, LS and LaCERTOSA.

37. SUNDACK neither filed tax returns nor did he calculate the amount of money due for the taxes as
well as not preparing tax documents for the filing and the payment of taxes or payments in the nature of
taxes owed to the Internal Revenue Service, the New York State Department of Taxation and Finance
and other New York State governmental entities for LONE STAR, LS, HEATSERVE, and

LaCERTOSA personally.

38. Upon information and belief, BEDFORD and SUNDACK's actions, by design, were perpetrated in pursuance of their conspiracy with BLACKMAN INC. and were for the purpose of making assets of LONE STAR, LS and LaCERTOSA that would have been paid in taxes and like payments available to be paid and paid to BLACKMAN INC. One of BEDFORD's deceptive acts was to procure from BLACKMAN INC. a credit limit for LS with BLACKMAN INC. for $50,000 which was facilitated by SCHIRANO and BLACKMAN INC.

39. On or about November 7, 2007, LONE STAR was in default in the repayment of credit extended by BLACKMAN INC. to the extent of approximately $12,000.

40.  As the credit manager of BLACKMAN INC., SCHIRANO managed and controlled the business accounts of BLACKMAN INC.'s customers and, with the knowledge and for the benefit of BLACKMAN INC., engaged in various unlawful business practices, consisting, *inter alia*, of the use and presentation as authentic of a document that was not authentic and was not intended to be presented, usury, extortion, intimidation, obstruction of justice, bank fraud, wire fraud and mail fraud (perpetrated via bogus invoices listed on frivolous BLACKMAN INC. statements to LS HOME SERVICES INC., P.O. BOX 570481, Whitestone, New York 11357-0481). BLACKMAN INC. contrived, through SCHIRANO, to cause LONE STAR and LS to hire BEDFORD, who, in turn, caused LaCERTOSA to hire SUNDACK, thereby insinuating into LONE STAR, LS, and LaCERTOSA individually, with long business relationships with BLACKMAN INC. Through a verbal statement made by SUNDACK, for approximately 20 years, BEDFORD and SUNDACK, worked together as a team and, with BLACKMAN INC., MR. BLACKMAN and SCHIRANO, constituted an enterprise for the purpose of diverting assets of the LONE STAR, LS, and  LaCERTOSA to BLACKMAN INC. Upon information and belief, the activities of  "Blackman Enterprise" were not confined to LONE STAR, LS, and LaCERTOSA but, whenever a customer of BLACKMAN INC. was indebted to BLACKMAN INC. and whose indebtedness was in default, BEDFORD, who was purported to be by SCHIRANO, "like a financial guy",  a "business growth turnaround expert," "banking expert" and "author of newsletters within the banking industry," would be endorsed and introduced by SCHIRANO of BLACKMAN INC. for the sole purpose of benefiting the Blackman Enterprise.

41. BEDFORD and SUNDACK worked in combination and concert which they asserted dominion and exercised control over the checkbooks and books of account of LONE STAR, LS, and LaCERTOSA through BEDFORD's "Creative Banking" tactics. As a result, assets of LONE STAR, LS, and LaCERTOSA were diverted to BLACKMAN INC. which were previously earmarked to pay Federal and New York State taxes, as well as LONE STAR's and LS's employee wages and other expenses. They did so in an intentional effort to deceive LaCERTOSA. BEDFORD further asserted dominion and exercised control of LS's website (lonestarheating.com),which was designed by BEDFORD but, using elements of LONE STAR'S already existing website, www.lonestarserviceplan.com. Further, what gave BEDFORD control of lonestarheating.com were instances in setting up the domain for the website such as; BEDFORD created an e-mail address, lonestarheat@yahoo.com, which LaCERTOSA was completely unaware of until LaCERTOSA found a document in his files from Domain Tools. BEDFORD had all necessary information, passwords, of the e-mail address, lonestarheat@yahoo.com, and the necessary information,passwords, of the domain of the website, lonestarheating.com which the document from Domain Tools shows BEDFORD and his company, Conflict Economics, as the domain holder and contact person. Because BEDFORD was the only one who had knowledge of the necessary information and passwords of lonestarheating.com, LaCERTOSA was unable to update the website to coordinate with the sale campaigns being offered at that time. Further, BEDFORD had set up a PayPal account which was only available on lonestarheating.com,the website BEDFORD designed which BEDFORD withheld the necessary information and passwords to access the account As a direct and proximate result of the acts of BLACKMAN INC. and its co-conspirators MR. BLACKMAN, BEDFORD, SCHIRANO and SUNDACK, plaintiffs have been damaged in the following additional respects: BEDFORD had maintained control of LS's website and did maintain control PayPal account, thereby engaging in wire fraud for the purpose of preventing LONE STAR, LS and LaCERTOSA from changing the prices of their goods and services to be competitive with other purveyors of similar goods and services. The aforementioned criminal act herein described is in violation of 18. U.S.C. § 2701 (a). Unlawful access to stored communications, which stipulates whoever--(1)"intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility;and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of

an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

42. In a fax communication of December 11th, 2007, paragraph #2, BEDFORD instructs LaCERTOSA to order two separate check books for the new LS corporation, one with checks bearing the name LS Home Services, Inc. with the check numbering sequence ending with check number 1030 and one with checks bearing the name Lone Star Home Heating Services with the check numbering sequence starting with check number 1031. In the same fax paragraph #3, Bedford also instructs LACERTOSA to call "Nova Merchant Services" which is the credit card terminal service used by LACERTOSA to process customer credit card payments for LONE STAR (Lone Star Home Heating Inc.) BEDFORD's purpose for LACERTOSA to switch all credit cards to be processed for deposit into the new LS account however, Nova would not switch the service because LS did not have its own sales tax registration number and other qualifying information. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. §1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

43. In a fax communication of December 15th, 2007, BEDFORD suggests to LACERTOSA "it would

be a good idea at this time if you opened up an account for LS Home Services, Inc. with another bank."

44. In a fax communication of December 19th, 2007,  page 2, paragraph #5, BEDFORD informs LACERTOSA that he will talk to Glen (the branch manager of Washington Mutual Bank, Smithtown, N.Y.) about opening an account for LACERTOSA.

45. In a fax communication of December 20th, 2007, BEDFORD informs LACERTOSA that he has arranged with David Lopez of Washington Mutual Bank located in Smithtown to open a bank account for LS. BEDFORD provides LACERTOSA with a map from yahoo.com with driving instructions and a list of items needed to open the account. The new bank that BEDFORD selects as a second bank is located two counties and approximately sixty miles away from where LACERTOSA's business operation was as well as where LACERTOSA's original bank account at Bank of America was located. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

46. In a fax communication of December 23rd, 2007, paragraph #1, BEDFORD instructs
LACERTOSA to keep sending him daily bank activity sheets which LACERTOSA was in routine of
printing the bank sheets out every morning. BEDFORD convinced LACERTOSA that by sending
BEDFORD daily bank activity sheets, it would help BEDFORD manage LACERTOSA's daily
finances. In actuality, the daily bank sheets would serve as a tool for BEDFORD to execute acts of
bank fraud through deceptive banking transactions. This overt criminal act by BEDFORD constitutes
violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a
pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates
"Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial
institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned
by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses,
representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30
years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire
fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of
racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of
the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or
television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud,
or for obtaining money or property by means of false or fraudulent pretenses, representations, or
promises, transmits or causes to be transmitted by means of wire, radio, or television communication in
interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of
executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years,
or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern
of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation
of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection
of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

47. In a fax communication of July 22nd, 2008, paragraph #1, BEDFORD instructs LACERTOSA to
write a check in the amount of $3,400.00 from the LS account at Bank of America, account
#004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at
Washington Mutual, account #395-3218069. Per LS Home Services' Bank of America check book stub
for check #1055 and according to LS Home Services account at Washington Mutual, a statement
indicates a deposit of $3,400.00 on July 22, 2008. In the same fax communication of July 22nd, 2008,
BEDFORD instructs LACERTOSA to write a check from the LS account at Washington Mutual,

account #395-3218069, and deposit into BEDFORD'S CONFLICT ECONOMICS, INC. account at Washington Mutual, account #3124924742. Per LS Home Services check #1090 payable to CONFLICT ECONOMICS, INC. and according to Washington Mutual deposit receipt for CONFLICT ECONOMICS, INC. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344, Bank fraud,  stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

48. In a fax communication of August 1st, 2008, paragraph #2, BEDFORD instructs LACERTOSA to write a check in the amount of $600.00 from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and to deposit the check into the LS account at Washington Mutual, account #395-3218069. Per LS Home Services' Bank of America statement reflects posting check #1059 for $600.00 on August 1, 2008. According to LS's Bank of America check book stub for check #1059, LS Home Services' Washington Mutual statement acknowledges deposit of $600.00 on August 1, 2008. In the same fax communication of August 1st, 2008, BEDFORD instructs LACERTOSA to write a check from the LS account at Washington Mutual, account #395-3218069, Check #1206,  in the amount of $3,550.11 payable to BLACKMAN INC. and "hold." This overt

criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

49. In a fax communication of August 22nd, 2008, BEDFORD instructs LACERTOSA to write a check in the amount of $1,781.69 from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at Washington Mutual, account #395-3218069. Per LS Home Services Bank of America statement, it indicates a posting of check #1065 for $1,781.69 on August 25, 2008. LS Home Services' Bank of America check book stub for check #1065 as well as LS's Washington Mutual statement acknowledging deposit of $1,781.69 on August 22, 2008. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or

promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

50. In a fax communication of August 25th, 2008, BEDFORD instructs LACERTOSA to write a check in the amount of $1,200.00 from the LS account at Washington Mutual, account #395-3218069 payable to cash and deposit the check into the LS account at Bank of America, account #004831287577 before 4 pm. Records show LS check #1236 from Washington Mutual in the amount of $1,200.00 and LS's Washington Mutual statement acknowledging check #1065 for $1,200.00 as well as Bank of America statement acknowledging deposit of check #1065 for $1,200.00. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud, and conspiracy to commit Bank Fraud and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or

promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


51. In a fax communication of September 15th, 2008, paragraph #4, BEDFORD instructs LACERTOSA to write a check in the amount of $3,600.00 from the LS account at Washington Mutual, account #395-3218069 payable to LS Home Services, Inc. and deposit the check into the LS account at Bank of America, account #004831287577 before 4 pm. Bank records show LS check #1265 from Washington Mutual in the amount of $3,600.00 and LS's Washington Mutual statement acknowledging check #1265 for $3,600.00 as well as LS's Bank of America statement acknowledging deposit of check #1065 for $3,600.00. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud,a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering

activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

52.  In a fax communication of September 15th, 2008, paragraph #4, BEDFORD instructs LACERTOSA to write a check in the amount of $3,600.00 from the LS account at Washington Mutual, account #395-3218069 payable to LS Home Services, Inc. and deposit the check into the LS account at Bank of America, account #004831287577 before 4 pm. Bank records reveal LS check #1265 from Washington Mutual in the amount of $3,600.00 and LS's Washington Mutual statement acknowledging check #1265 for $3,600.00 as well as LS's Bank of America statement acknowledging deposit of check #1065 for $3,600.00. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

53. In a fax communication of September 18th, 2008, paragraph #1, BEDFORD instructs LACERTOSA to write a check in the amount of $1,800.00 from the LS account at Washington Mutual, account #395-3218069 payable to LS Home Services, Inc. and deposit the check into the LS account at Bank of America, account #004831287577. Bank records show LS check #1267 from Washington Mutual in the amount of $1,800.00 and LS's Bank of America statement acknowledging deposit of check #1267 for $1,800.00 on September 18, 2008. In the same fax communication of September 18th, 2008  paragraph #2, BEDFORD instructs LACERTOSA to write a check in the amount of $350.00 from the LS account at Washington Mutual, account #395-3218069, and deposit into BEDFORD'S CONFLICT ECONOMICS, INC. account at Washington Mutual, account #3124924742.Bank records show LS Check #1268 from LS's Washington Mutual account payable to CONFLICT ECONOMICS, INC. as well as Washington Mutual deposit receipt for CONFLICT ECONOMICS, INC. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

54. In a fax communication of September 19th, 2008, paragraph #1, BEDFORD instructs LACERTOSA to write a check in the amount of $3,471.00 from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at Washington Mutual, account #395-3218069 after 3:30 pm. that same day. Bank records reveal LS's Bank of America statement acknowledging check #1070 for $3,471.00 on September 19, 2008 and LS's Bank of America check book stub for check #1070 and LS's Washington Mutual statement acknowledging deposit of check #1070 for $3,471.00 on September 19, 2008. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


55. In a fax communication of September 25th, 2008, paragraph #1, BEDFORD instructs LACERTOSA to write a check in the amount of $2,500.00 from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at Washington Mutual, account #395-3218069. Bank records show LS's Bank of America statement

acknowledging check #2064 for $2,500.00 on September 26, 2008 and LS's Bank of America check book stub for check #2064 as well as LS's Washington Mutual statement acknowledging deposit of check #2064 for $2,500.00 on September 25, 2008. In the same fax communication of September 18th, 2008, BEDFORD instructs LACERTOSA to write a check in the amount of $350.00 from the LS account at Washington Mutual, account #395-3218069, and deposit into BEDFORD'S CONFLICT ECONOMICS, INC. account at Washington Mutual, account #3124924742. According to bank records, LS Check #1274 from Washington Mutual was made payable to CONFLICT ECONOMICS, INC and LS's Washington Mutual deposit receipt for CONFLICT ECONOMICS, INC. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

56.  In a fax communication of September 26th, 2008, paragraph #3, BEDFORD instructs

LACERTOSA to write a check in the amount of $2,300.00 from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at Washington Mutual, account #395-3218069. According to LS's Bank of America statement acknowledging check #1071 for $2,300.00 on September 29, 2008 as well as LS's Bank of America check book stub for check #1071. In addition, LS's Washington Mutual statement acknowledging deposit of check #1071 for $2,300.00 on September 26, 2008. In the same fax communication of September 26th, 2008, BEDFORD instructs LACERTOSA to write a check in the amount of $440.00 from the LS account at Washington Mutual, account #395-3218069, payable to CONFLICT ECONOMICS and deposit into BEDFORD'S CONFLICT ECONOMICS, INC. account at Washington Mutual, account #3124924742.According to bank records, LS Check #1278 from its Washington Mutual account was made payable to CONFLICT ECONOMICS, INC. and LS's Washington Mutual deposit receipt for CONFLICT ECONOMICS, INC. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

57.   In a fax communication of November 21st, 2008,  paragraph #2, BEDFORD instructs LACERTOSA to write a check in the amount of $2,500.00 from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at Washington Mutual, account #395-3218069. According to LS's Bank of America statement acknowledging check #1073 for $2,500.00 on November 24, 2008 and LS's Bank of America check book stub for check #1073 as well as its Washington Mutual statement acknowledging deposit of check #1073 for $2,500.00 on November 21, 2008. In the same fax communication on November 21st, 2008, paragraph #4, BEDFORD instructs LACERTOSA to write a check in the amount of $332.50 from the LS account at Washington Mutual, account #395-3218069, payable to CONFLICT ECONOMICS and deposit into BEDFORD'S CONFLICT ECONOMICS, INC. account at Washington Mutual, account #3124924742.Bank records reveal LS Check #1374 from Washington Mutual payable to CONFLICT ECONOMICS, INC. as well as Washington Mutual deposit receipt for CONFLICT ECONOMICS, INC. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

58. In a fax communication of November 25th, 2008, paragraph #1, BEDFORD informs LACERTOSA

of an e-mail BEDFORD received from SCHIRANO. In addition to BEDFORD's fax to LACERTOSA
is a faxed copy of the e-mail SCHIRANO sent to BEDFORD, SCHIRANO's e-mail is in reference to a
check from LS's Washington Mutual account in the amount of $3,386.99 that LACERTOSA issued to
BLACKMAN INC. for payment of invoices for the LS account #20735. The check #1351 issued from
LACERTOSA clearly lists the invoices that check # 1351 is dedicated for and those invoice numbers
are respective to BLACKMAN INC's invoice numbers for the LS account only and the sequence of
those invoice numbers do not correspond nor are they duplicates of any of BLACKMAN INC.'s
invoice numbers for the LONE STAR account. The account number #20735 at the top left corner of
check #1351 was not written by LACERTOSA. The account number was written on the check while in
BLACKMAN, INC's possession after LACERTOSA issued the check #1351 to BLACKMAN, INC.
SCHIRANO states in his e-mail to BEDFORD dated November 25, 2008 at approximately 1:22pm that
"Margaret put down the old acct #" referring to LONE STAR for which the LONE STAR account
number was #11182. However, the new LS account number #20735 is clearly written on check #1351,
which contradicts SCHIRANO's e-mail. SCHIRANO further requests BEDFORD's instructions
whether to reverse it back to the new account. In actuality, check #1351 in the amount of $3,386.99
was never credited nor was payment acknowledged by BLACKMAN, INC. to LS nor LONE STAR. In
fact, BLACKMAN INC. continued to charge LS for the invoices paid by check #1351 for several
months thereafter which such invoices also appeared on the BLACKMAN INC. statement submitted to
court when BLACKMAN INC. sued LS and LACERTOSA in Suffolk County Supreme Court which
BLACKMAN INC.'s case was dismissed. This overt criminal act by BEDFORD constitutes violation
of 18 U.S.C. § 1344. Bank fraud, and conspiracy to commit Bank Fraud, a predicate act and a pattern
of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates
"Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial
institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned
by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses,
representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30
years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire
fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of
racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of
the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or
television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud,
or for obtaining money or property by means of false or fraudulent pretenses, representations, or
promises, transmits or causes to be transmitted by means of wire, radio, or television communication in

interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


59.  In an e-mail communication on December 11th, 2008,  from BEDFORD which BEDFORD sends in a form whereby it appears BEDFORD attempts to hide the source and not identify the sender. BEDFORD instructs LACERTOSA to give false information to the credit card company, Nova Merchant Services, in order to switch LACERTOSA's credit card terminal from Bank of America to Washington Mutual. BEDFORD's e-mail was in code and when LACERTOSA spoke with BEDFORD on the phone on the same day, BEDFORD identified the references for each code. However, BEDFORD was not clear in explaining the way he was using code or the reason he would need to use codes. LACERTOSA, however, sensed BEDFORD's instructions to be of an inappropriate nature and therefore, LACERTOSA never followed up on BEDFORD's instructions in this matter. BEDFORD's goal was to coerce LACERTOSA to give the credit card company, Nova Merchant Services, false information. That being; the bank account number for the LONE STAR account at Bank of America (which had been closed since February 2008 on the instructions of BEDFORD) which had a sales tax registration number respective to that company and bank account. However, BEDFORD and SUNDACK, in a coordinated and concerted effort, closed down LONE STAR earlier in the year. Had LACERTOSA followed up on BEDFORD's instructions and been successful in transferring the credit card terminal, it would have created an increase in revenue assets diverted to BLACKMAN INC. and would ultimately further damage LACERTOSA as stated hereon. The aforementioned overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of

18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

60.  In a fax communication of December 23rd, 2008, BEDFORD instructs LACERTOSA to write a check in the amount of $1,216.98  from the LS account at Bank of America, account #004831287577 payable to LS Home Services, Inc. and deposit the check into the LS account at Washington Mutual, account #395-3218069. Bank records reveal LS's Bank of America statement acknowledging check #2098 for $1,216.98 on December 24, 2008 and its Bank of America check book stub for check #2098 as well as LS's Washington Mutual statement acknowledging deposit of check #2098 for $1,216.98 on December 23, 2008. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,

transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

61. In a fax communication of January 14th, 2009, paragraph #1, BEDFORD makes reference to the fact that Washington Mutual bank on January 13th, 2009 suddenly would not allow LACERTOSA to access LACERTOSA's account on line and would no longer accept deposits for the account. This was completely unexpected and not imaginably anticipated by LACERTOSA since SCHIRANO had described BEDFORD to LACERTOSA as a "financial guy," "like an accountant," and BEDFORD also described himself as a "banking expert" for over 20 years, and "author of newsletters within the banking industry." Further to LACERTOSA's astonishment was the fact that BEDFORD's credentials were also endorsed by SUNDACK, a certified public accountant, who had told LACERTOSA that he and BEDFORD had been working together as a team on "business growth turnaround" projects for over 20 years. BEDFORD's fax communication makes it clear that BEDFORD knew Washington Mutual closed the account as a result of his past banking instructions to LACERTOSA by stating "I would say that our relationship with WM is over. One could say "collateral damage" as a result of the necessary action taken over the past weeks in order to keep the business moving forward." Further to BEDFORD's admission and knowledge of the fact that Washington Mutuals action was caused by BEDFORD's illegal banking instructions is the fact that BEDFORD never took the initiative to contact Washington Mutual on behalf of LACERTOSA (as LACERTOSA's financial advisor) to question Washington Mutual as to what their action for closing the LS account was based on considering that fact that on January 13th, 2009, LACERTOSA had made BEDFORD aware that he received an official letter from Washington Mutual on the day in which Washington Mutual stated the LS account will close on February 12th, 2009 allowing BEDFORD thirty days to communicate with Washington Mutual and research the reasons for why the LS account was closed. Further to BEDFORD's knowledge that his banking instructions was the cause for Washington Mutual closing the LS account and evidence of BEDFORD's intentions to continue his deceptive acts of deceiving the banks, is the fact that in the same fax of January 14th, 2009, BEDFORD actually instructs LACERTOSA to open a new account in another bank to replace the Washington Mutual account for LS. Based on the foregoing

and apparent illegal advice and counsel by BEDFORD, LS, LONE STAR and LACERTOSA refused to do so. This overt criminal act by BEDFORD constitutes violation of 18 U.S.C. § 1344. Bank fraud and conspiracy to commit Bank Fraud, a predicate act and a pattern of racketeering of the "Blackman Enterprise." 18 U.S.C. § 1344. Bank fraud which stipulates "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §1343 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

62. SCHIRANO called LaCERTOSA's voice mail and left several threatening, hostile and vulgar messages on it for the purpose of intimidating LONE STAR and LS for the purpose of extorting their payment of funds to BLACKMAN INC. to avoid the acts of disparagement of the business of LONE STAR, LS, LaCERTOSA and HEATSERVE through the threatened publication of false and disparaging information. These acts were part of a concerted plan to damage and did damage to the business of LONE STAR, LS, and LaCERTOSA adopted by the enterprise.

63. BLACKMAN INC., MR. BLACKMAN, SCHIRANO, BEDFORD and SUNDACK, among others, constituted an enterprise that had the ultimate goal of participation in and control of the business and property of LONE STAR and LS, thereby driving LONE STAR and LS and their sole shareholder,

LaCERTOSA, out of business. BLACKMAN INC. and its co-conspirators similarly dealt with other similarly situated customers of BLACKMAN INC. SCHIRANO called LaCERTOSA's office, LaCERTOSA's personal cell phone, and  LaCERTOSA's home, leaving several threatening, hostile, and vulgar messages on multiple occasions for the purpose of intimidating and coercing LONE STAR, LS, and LaCERTOSA for the purpose of extorting payment of funds to BLACKMAN INC. These acts were part of a concerted plan and conspiracy to damage the business of LONE STAR, LS, LaCERTOSA and HEATSERVE adopted by the Blackman enterprise. BLACKMAN INC., MR. BLACKMAN, SCHIRANO, BEDFORD and SUNDACK, among others, constituted an enterprise that had the ultimate goal of participation in and control of the business and property of LONE STAR and LS, in an effort to extort LONE STAR, LS, and  LaCERTOSA personally, to the point where LONE STAR, LS, and LaCERTOSA would be indebted to BLACKMAN INC., enabling BLACKMAN INC. to overall liquidate the assets of LONE STAR, LS, and LaCERTOSA personally. BLACKMAN INC. and its co-conspirators similarly dealt with other similarly situated customers of BLACKMAN INC.

64. Between the diversion of funds of LS to BLACKMAN INC. and the failure and refusal to pay LONE STAR's, LS's, LaCERTOSA's and HEATSERVE 's Federal and New York State tax obligations, BEDFORD and SUNDACK systematically ruined LS in pursuance of the goal of the enterprise and the conspiracy of BEDFORD and SUNDACK with SCHIRANO, MR. BLACKMAN and BLACKMAN INC. In addition to his other acts in furtherance of the scheme to defraud and conspiracy of the enterprise and its co-conspirators, SCHIRANO, on or about February 23, 2009, and subsequent thereto, repeatedly called LaCERTOSA and left several threatening, hostile and vulgar messages on his voice mail for the purpose of intimidating LaCERTOSA and the staff of LS and thereby cow LaCERTOSA into submission into BLACKMAN INC.'s diversion of LS's assets. Between the diversion of funds of LS, LONE STAR, and LaCERTOSA to BLACKMAN, INC. and the intentional failure to handle Federal and New York State tax obligations of LONE STAR, LS, LaCERTOSA, and HEATSERVE, BEDFORD and SUNDACK systematically ruined LS in pursuance of the goal of the enterprise and the conspiracy of BEDFORD and SUNDACK with SCHIRANO, MR. BLACKMAN and BLACKMAN INC.

65.  As a direct and specific result of such diversion of assets, the combined Federal and State tax liabilities of LONE STAR, LS, and HEATSERVE , including liabilities for trust fund taxes for which LaCERTOSA may be faced with claims of personal liability, increased by a total of at least

$649,049.25. In addition, as a result of the diversion of assets of LS, LONE STAR and HEATSERVE by the enterprise, LS, LONE STAR, LaCERTOSA and HEATSERVE were rendered incapable of taking advantage of otherwise applicable tax amnesty provisions which would have saved them and LaCERTOSA at least $591, 649.87.

66.  Upon information and belief, the acts of BLACKMAN INC., its co-conspirators, MR. BLACKMAN, BEDFORD, SCHIRANO and SUNDACK, and the Blackman enterprise, were planned in advance and resulted in acquisition by BLACKMAN INC. of control of the business and property of LONE STAR, LS, LaCERTOSA and HEATSERVE and similar acts were perpetrated on other BLACKMAN INC. customers similarly situated, and used the United States mails, thereby establishing a pattern of racketeering activity of the Blackman Enterprise  in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c) and constituting a violation of 18 U.S.C. § 1962(b).

67. As a direct and proximate result of the acts of BLACKMAN INC. and its co-conspirators MR. BLACKMAN, BEDFORD, SCHIRANO and SUNDACK, plaintiffs have been damaged in the following additional respects: to the date hereof, BEDFORD has maintained control of LS's web site and did maintain control of LONE STAR's, LS's and LaCERTOSA's phone system, website and PayPal account, thereby engaging in wire fraud for the purpose of preventing LONE STAR, LS and LaCERTOSA from changing the prices of their goods and services to be competitive with other purveyors of similar goods and services.

68. In a facsimile communication bearing the date of April 3, 2009, BEDFORD threatened to remove from his hard drive the information used to create and maintain the LS website to coax plaintiff an extort an unlawful debt from plaintiff ob behalf of all of the defendant's forming the Blackman Enterprise. Since BEDFORD was and is the sole source of knowledge of the passwords for the LS website, this communication constituted a threat by BEDFORD to close down the website and deprive LS of the use of the website if LaCERTOSA did not respond to BEDFORD for purposes and reasons not disclosed by BEDFORD in his communication. The aforementioned criminal act described herein is in violation of the Hobbs Act and conspiracy to commit thereof, codified 18 U.S.C. § 1951(a), Interference with Commerce by threats or violence, which stipulates  " Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any

person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years. " 18 U.S.C. § 1951(b) (2) defines Extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act. The aforementioned criminal act herein described is in violation of 18. U.S.C. § 2701 (a). Unlawful access to stored communications, which stipulates whoever "(1)intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility;and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." The aforementioned criminal acts described herein constitutes a predicate act and  pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

69.  Under the date of March 26, 2008, a fax communication bearing a legend indicating that it emanated from a facsimile transmission machine of CONFLICT ECONOMICS, one of BEDFORD's companies, though with a concealed identification of the telephone number of the machine from which it emanated, was sent to LaCERTOSA. The communication consisted of a draft of a letter from BLACKMAN INC., under the signature of SCHIRANO to an unnamed person, a recipient of the letter, who purchased goods and services from a customer of BLACKMAN INC.'s. The letter referred to BLACKMAN INC.'s customer as a "contractor" of BLACKMAN INC. and called upon the recipient of the letter to pay BLACKMAN INC., rather than "the contractor" that had installed the equipment for the recipient of the letter. The letter called upon the recipient of the letter to pay any sums owed by the recipient directly to the supplier and to contact the local Better Business Bureau to inform them of the addressee's "situation so that contractors of this nature do not prey on other customers we might fall victim to." Concurrently with the sending of this communication, BEDFORD referred to this communication to LS as one that BLACKMAN INC. would send to customers of LS if LS did not pay BLACKMAN INC. whatever BLACKMAN INC. demanded from LS. If such a letter were to have been sent by BLACKMAN INC. to a customer of LS's as BEDFORD said it would be if LS did not

pay, it would have been a misrepresentation of the relationship of LS to BLACKMAN INC. and, therefore, of LS's relationship to its customers, in that LS was not a "contractor" of BLACKMAN INC.'s and LS's customers had no contractual relationship with BLACKMAN INC. The delivery by BEDFORD to LaCERTOSA of this facsimile communication constituted a predicate act and part of a pattern of racketeering activity involving wire fraud by the enterprise within the meaning of 18 U.S.C. § 1962.  The aforementioned criminal act described herein is in violation of the Hobbs Act and conspiracy to commit thereof, codified 18 U.S.C. § 1951(a), Interference with Commerce by threats or violence, which stipulates  " Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years. " 18 U.S.C. § 1951(b) (2) defines Extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

70. In addition to the other acts of BLACKMAN INC. with respect to LONE STAR, LS and LaCERTOSA, BLACKMAN INC. engaged regularly and repeatedly for a period of more than two years in a practice of secretly "double billing, triple or more" LONE STAR, LS and LaCERTOSA for the same goods and services. Unbeknownst to LONE STAR, LS and LaCERTOSA, BLACKMAN INC. secretly converted fees for "Service Charges" previously billed to and paid by LONE STAR, LS and LaCERTOSA into codes indicating "Adjustments." In at least one instance, an invoice (#4372919)

rendered by BLACKMAN INC. to LONE STAR, which had been paid on a C.O.D. basis by LONE STAR was re-billed to LONE STAR by BLACKMAN INC. as a charge transaction without crediting LONE STAR with the payment it had already made on a C.O.D. basis. Subsequently, the same invoice was billed yet another time by BLACKMAN INC. to LONE STAR without crediting LONE STAR with the payment of the original invoice that it had made to BLACKMAN INC. – at least one instance of "triple billing." On information and belief, the foregoing billing practices by BLACKMAN INC. were not inadvertent, but were intentional and fraudulent, thereby constituting part of the pattern of racketeering activity on the part of the "Blackman Enterprise". In addition to the other predicate and overt acts of BLACKMAN INC. with respect to LONE STAR, LS and LaCERTOSA, BLACKMAN INC. engaged regularly and repeatedly for a period of more than two years in a practice of "double billing" LONE STAR, LS and LaCERTOSA for the same goods. On information and belief, the foregoing billing practices by BLACKMAN INC. were not inadvertent, but were intentional and fraudulent, thereby constituting part of the pattern of racketeering activity on the part of the Blackman enterprise to collect an unlawful debt affecting interstate commerce.

71. The double and triple billing and in many cases more, of LS by BLACKMAN INC. was accomplished by BLACKMAN INC. through the use of the same sales order and invoice number for multiple transactions in which LS purchased a variety of goods from BLACKMAN INC. in different purchase transactions for resale to LS's customers. Because LS did not have a Certificate of Authority from the New York State Department of Taxation and Finance that it could use to purchase tangible personal property for resale to its customers without the payment of sales tax to its supplier, BLACKMAN INC., LS was required to purchase goods from BLACKMAN INC. in transactions that were subject to sales tax, which sales tax LS paid to BLACKMAN INC.  Such activities, whether confined to transactions between it and LS or to transactions between it and other of its customers, if engaged in by BLACKMAN INC., constitute racketeering activities on the part of BLACKMAN INC. and the enterprise.  The double and triple billing of LS by BLACKMAN INC. was accomplished by BLACKMAN INC. through the use of the same sales order and invoice number but, at different amounts to give the illusion of multiple transactions.

72. In addition, BLACKMAN INC. intentionally and fraudulently omitted credit payments by LONE STAR, LS and LaCERTOSA to BLACKMAN INC. on statements issued to LONE STAR, LS and LaCERTOSA by BLACKMAN INC., thereby concealing such payments from LONE STAR, LS and LaCERTOSA and compelling them to maintain their own payments to keep track of records made to

BLACKMAN INC.

73.  Based on LS Home Services, Inc. Debit & Credit Ledger from November 27, 2007 through November 23, 2009, Blackman Statements and fraudulent invoices from November 30, 2007 through December 31, 2009, copies of canceled checks, including copies of Blackman's endorsement for all recycled, re-billed and disappearing invoices paid but not acknowledged sent through the U.S. Mails were committed as a scheme to defraud thereby constituting a predicate act of mail fraud pursuant to 18 U.S.C. 1341  and wire fraud pursuant to 18 U.S.C. 1343. In addition, BLACKMAN INC. failed to credit payments by LONE STAR, LS and LaCERTOSA to BLACKMAN INC. on statements sent through the U.S. Mail to LONE STAR, LS and LaCERTOSA by BLACKMAN INC., thereby concealing such payments from LONE STAR, LS and LaCERTOSA and compelling them to maintain their own records to keep track of records made to BLACKMAN INC.  During the course of BEDFORD's employment by LONE STAR, LS, LaCERTOSA and HEATSERVE, BEDFORD became privy to private personal information concerning all of the members of LaCERTOSA's immediate family, which information was and is susceptible of use to the disadvantage of and injury to LaCERTOSA and members of his family by persons motivated to do so.

74. Starting on or about March 31, 2008, LS receives a statement through the U.S. Mails from Blackman, LS Home Services, Inc. account number 20735. Said statement reflects a balance that begins with a recycled invoice paid on March 14, 2008.  Said statement should begin with the oldest open invoice # 4533059 in the amount of $2,427.20. Blackman shows statement beginning balance with invoice #4474300 with a recycled amount of $120.00.  Invoice #4474300 was paid in the full amount of $1,597.82 on 3/14/08 Check # 1046 .Check # 1046 also included payment for invoices #4456493, #4457008, #4457152 in the total check amount appears invoice #4474300 was selected by Blackman to be recycled because the invoice number sequence is the closest to the newer invoices and because of the statement beginning balance shows the invoice date 12/21/07. Because Blackman shows the statement beginning balance with invoice #4474300, Blackman was able to apply a service charge of $353.83 for invoices back to December 2007 which were already paid. As a result of recycling invoice #4474300, Blackman was able to charge in excess of $534.87 on the March 31st, 2008 statement. Excess charges total $534.87. The aforementioned billing statement described herein was sent through the United States Mails with the intent to and scheme to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised

or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a  pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).  As a direct and proximate result of the repeated and ongoing racketeering acts alleged herein, Plaintiffs have been injured by those acts engaged in heretofore by the Blackman enterprise and were threatened by BLACKMAN INC. through its associate and co-conspirator, BEDFORD, as well as BLACKMAN INC.'s  credit manager, SCHIRANO.


75. On or about April 30, 2008, LS receives a statement from Blackman through the U.S. Mails. Said statement reflects a fraudulent statement indicating a balance that begins with bogus re-cycled invoice, which was paid by LS on April 9, 2008. Statement beginning balance should begin with the oldest open invoice #4558013 from 2/19/08 in the amount of $2,289.22. Payments skipped over because of paying some invoices after 2/19/08 leaving invoice #4558013 from 2/19/08 as the oldest open invoice, therefore invoice #4558013 should be the beginning oldest open invoice listed on the April 30th, 2008 statement. Blackman shows statement beginning balance with invoice #4538647 of 2/5/08 in the amount of $134.27.Invoice #4538647 was paid in full on 4/9/08 Check # 1074 within the total check amount of $3,076.70. Check # 1074's total check amount of $3,076.70 also included payment for the next two consecutive invoices #4538310 and #4541265 and invoice #4533059. Check # 1074 paid a total of 4 invoices however only 3 invoices #4538647, #4538310, and #4541265 appear on the April 30th, 2008 statement. Invoice #4533059 in the invoiced amount of $2,527.20 does not appear due to

the fact that it is the oldest invoice in numerical sequence and would have to appear before the invoice #4538647 which Blackman begins the April 30th, 2008 statement with. As a result of recycling invoice #4538647, Blackman was able to charge in excess of $549.50 on the April 30th, 2008 statement. There were a total of three (3) re-cycled invoices that appear on the statement thereof. The excess charges total. $549.50. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341.  18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

76. On or about May 31, 2008, balance begins with a recycled invoice paid on April 9, 2008. Running balance includes two other invoices that were already paid on April 9, 2008. Statement beginning balance should begin with the oldest open invoice #4607205 from 3/18/08 in the amount of $2,575.66. This invoice was not yet paid as per the LS Debit and Credit Ledger until the following month on 6/3/08 Check # 1140 in the total check amount of $2,845.92. However, this invoice does not appear (as it should) on the May 31st, 2008 statement or on any other statement from this time on. This invoice along with the other invoices on Check #1140 just disappear as mentioned below. Blackman shows statement beginning balance with invoice #4538647 of 2/5/08 in the amount of $134.27 and also shows two other invoices #4541265 from 2/6/08 in the amount of $35.31 and

#4538310 from 2/12/08 in the amount of $379.92 Invoice #4538647, #4541265, and #4538310 was paid in full along with invoice #4533059 on 4/9/08 Check # 1074 within the total check amount of $3,076.70. A service charge of 2/29/08 #SC46379 is applied to the balance. Any statements with posting in the Amount Received column as "unapplied cash" or "credit" etc. are not cash (currency) paid to Blackman by LS but are credits for returned items. As a result of recycling invoice #4538647, Blackman was able to illegally charge in excess of $798.45 on the May 31st, 2008 statement. The May 31st, 2008 statement beginning balance should begin with the oldest open invoice #4607205 from 3/18/08 in the amount of $2,575.66 and continue consecutively with invoices #4610504, #4604712, and #4615916 as per the LS Debit and Credit Ledger and copies of checks. These 4 invoices just disappear and do not show up on any statements hereafter. However, these 4 invoices were not paid until 6/3/08 on Check #1140  in the total check amount of $2,845.92. Because these invoices appear on the 3/31/08 statement then disappear on the May 31st, 2008 statement, one can assume that Blackman wrote off these invoices however, Blackman accepted payment for these invoices on 6/3/08. The endorsement on this check #1140  is from J.P. Morgan Chase. All other prior check endorsements are from Citibank. Four invoices not yet paid as per LS ledger do not appear on May statement and do not appear on future statements. Endorsements by Blackman on check from LS on June 3, 2008 dedicated to pay 4 missing invoices is at JP Morgan Chase. All other are from Citibank. Excess charges total $798.45. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341.  Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined

under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act  and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

77.  On or about June 30, 2008, LS never received a statement. If it did, the June 30th, 2008 statement beginning balance should begin with the oldest open invoice #4629915 from 3/31/08 in the amount  of $398.92.The May 31st, 2008 statement did not show open invoices #4607205, #4610504, #4604712, and #4615916 which now, as of June 2008, are paid by Check #1140 on 6/3/08 in the total check amount of $2,845.92. Note this check #1140 is the only check endorsed with J.P. Morgan Chase. All other prior check endorsements are with Citibank. Note: Check # 1147 of 6/13/08 in the total check amount of $3,532.13 paid invoices #4613862, #4618095, #4622105, #4611237, and #4628671. Check endorsed by Citibank. Check # 1148 of 6/17/08 in the total check amount of $2,222.64 paid invoices #4620019 and #4622266 which do not appear on the next month, 7/31/08 statement and is should not. The endorsement on this check is hand written, scribbled, and does not have an account number of the endorser for deposit. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt

Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

78.     On or about July 31, 2008, balance begins with a re-cycled invoice previously paid on April 9, 2008 which is the third time Blackman re-cycled this paid fraudulent invoice. Running balance includes three other recycled invoices also recycled for the third time. The excess charges total $1, 072.01. Statement beginning balance should begin with the oldest open invoice #4667782 from 4/22/08 in the amount of $3,027.29. This and any other statements with posting "unapplied cash" is not cash (currency) paid to Blackman by LS. All forms of payment for LS issued to Blackman were dedicated to paying specific invoices by check. Blackman shows statement beginning balance with invoice #4538647 of 2/5/08 in the amount of $134.27 and also shows two other invoices #4541265 from 2/6/08 in the amount of $35.31 and #4538310 from 2/12/08 in the amount of $379.92 Invoice #4538647, #4541265, and #4538310 was paid in full along with invoice #4533059 on 4/9/08 Check # 1074  within the total check amount of $3,076.70. Invoice #4533059 is the only invoice on check #1074 that does not appear on the July 31st, 2008 statement. By Blackman depositing Check #1074, Blackman acknowledges payment of all invoices of this check however, Blackman continues to show invoices #4538647, #4541265, and #4538310 as unpaid invoices. Invoice #4538647, although paid on 2/5/08, Blackman has used this invoice for the 3rd time since the April 30th, 2008 statement as a starting balance. By depositing Check #1074, Blackman acknowledges payment for the 4 invoices applied to this check. By Blackman recycling 3 out of the 4 invoices on this check, this statement clearly shows how Blackman has the ability and particularity to pick and choose which invoices to recycle. Also, there is a posting for "unapplied cash" #UC58246 in the amount of $422.50 and a "credit" #4595330 in the amount of $26.89 for a returned item. As a result of recycling invoice #4538647 and other invoices after, Blackman was able to charge in excess of $1,072.01 on the July 31st, 2008 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud  in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or

procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal acts described herein constitutes a predicate act and  pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**


79.  On or about August 31, 2008, LS receives a statement from Blackman through the U.S. Mails. The balanced reflected on the statement begins with a recycled invoice paid on April 9, 2008, which is now the fourth time Blackman has recycled this paid invoice. The running balance includes three other invoices also recycled for a fourth time. The excess charges total $1, 430.91. Statement beginning balance should begin with the oldest open invoice #4697451 from 5/8/08 in the amount of $2,526.28. This and any other statements with posting "unapplied cash" is not cash (currency) paid to Blackman by LS. All forms of payment for LS issued to Blackman were dedicated to paying specific invoices by check. Blackman shows statement beginning balance with invoice #4538647 of 2/5/08 in the amount of $134.27 and also shows two other invoices #4541265 from 2/6/08 in the amount of $35.31 and #4538310 from 2/12/08 in the amount of $379.92 Invoice #4538647, #4541265, and #4538310 was paid in full along with invoice #4533059 on 4/9/08. Check # 1074 ("O") within the total check amount of $3,076.70. Invoice #4533059 is the only invoice on check #1074 that does not appear on the July 31st, 2008 statement. By Blackman depositing Check #1074 ("O"), Blackman acknowledges payment of all invoices of this check. However, Blackman continues to show invoices #4538647, #4541265, and #4538310 as unpaid invoices. Invoice #4538647, although paid on 2/5/08, Blackman has used this invoice for the 4th time since the April 30th, 2008 statement as a starting balance. By depositing Check #1074, Blackman acknowledges payment for the 4 invoices applied to this check. By Blackman recycling 3 out of the 4 invoices on this check, this statement clearly shows how Blackman has the

ability and particularity to pick and choose which invoices to recycle. As a result of recycling invoice #4538647 and other invoices after, Blackman was able to charge in excess of $1,430.91 on the August 31st, 2008 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


80. On or about September 30, 2008, LS receives a billing statement via the U.S. Mails from Blackman. The balanced reflected on the statement begins with a fictitious invoice dated June 10, 2008. LS never received a June 2008 statement. LS has no record of this invoice dated June 10, 2008. Fictitious invoice appeared on the July and August 2008 statements at $1,268.87 but now appears in September 2008 at $133.88. The running balance includes a second fictitious invoice and two recycled invoices. The excess charges total $3, 377.48. Statement beginning balance should begin with the oldest open invoice #4783058 from 6/27/08 in the amount of $3,025.86.Blackman shows statement beginning balance with a fictitious invoice #4752493 of 6/10/08 in the amount of $133.88. This invoice

is fictitious due to the facts that there is no invoice of record and there is no June statement. However, this invoice does appear on the 7/31/08 and 8/31/08 statements but in the amount of $268.87. Even if an invoice is produced, it is still fictitious due to the fact that it is recycled at a different amount from $268.87  to $133.88 for Blackman to bill in excess Blackman's September 30th, 2008 statement contains a paid invoice #4768732 from 6/19/08 in the amount of $2,856.77. However, this invoice was paid in full on 9/29/08 by Check # 1283. Being that payment of this invoice was issued in September, it should not have appeared on the September 30th, 2008 statement. By Blackman showing this invoice as open and fails to acknowledge payment of this invoice, Blackman is using this invoice to bill in excess. Also, the September 30th, 2008 statement shows an invoice #4917872 from 9/17/08 in the amount of $367.91 as open however, this invoice was paid by Check # 1264 in full on 9/16/08 as a C.O.D. The September 30th, 2008 statement shows another fictitious invoice #4791136 from 6/30/08 in the amount of $13.92, an invoice which there is no record of but, Blackman uses this invoice to bill in excess. As a result of Blackman beginning the statement balance with a fictitious invoice #4752493, re-billing of a paid invoice #4768732, recycling a C.O.D. invoice #4917872 to appear as an on account invoice, and applying another fictitious invoice #4791136, Blackman was able to charge in excess of $3,372.48 on the September 30th, 2008 statement. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting

interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

81. On or about October 31, 2008,  LS receives a billing state via the U.S. Mails from Blackman. The
balance reflects on the statement that begins with five recycled invoices. Balance is missing 5 unpaid
that are shown on previous statements but disappear on this statement. However, Blackman accepts
payment for those fraudulent invoices in November 2008. Check #1329 shows a handwritten
endorsement without an account number. Blackman chooses particular invoices to recycle. The excess
charges total to $3, 958.20.  Statement beginning balance should begin with the oldest open invoice
#4872963 from 8/21/08 in the amount of $2,852.47. This invoice #4872963 appears on the August
31st, 2008 and September 30th, 2008 statements but, disappears on the October 31st, 2008 and
thereafter. It appears that Blackman wrote this invoice off before payment was even made due to the
fact that payment for this invoice along with invoices #4885334, #4906005, #4899792, and #4912722
was made on 11/1/08 Check # 1329 in the total check amount of $3,345.77. All 5 of the above invoices
are missing from the October 31st, 2008 statement. The hand written endorsement on Check # 1329
which does not show an account number under the endorsement. On the front of the check, there is no
A/R 20735 or #18788001 that usually appears hand written on all Blackman checks once Blackman
receives the check. Said billing statement  sent though the mail and is an overt criminal act by
BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud
in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having
devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by
means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan,
exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or
spurious coin, obligation, security, or other article, or anything represented to be or intimated or held
out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or
attempting so to do, places in any post office or authorized depository for mail matter, any matter or
thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any
matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes
or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such
carrier according to the direction thereon, or at the place at which it is directed to be delivered by the
person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned
not more than 20 years, or both." The aforementioned criminal act described herein constitutes a
predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C.

§1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt
Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C.
§1961 (a), (b), (c).

82. Blackman begins October 31st, 2008 statement with invoices that have already been paid:

| 08/07/08 | #4849614 | $315.56 | Check # 1312 | Paid 10/17/08 |
|----------|----------|---------|--------------|---------------|
| 08/22/08 | #4876386 | $155.99 | Check # 1312 | Paid 10/17/08 |
| 08/27/08 | #4883898 | $224.55 | Check # 1312 | Paid 10/17/08 |
| 08/14/08 | #4863958 | $610.53 | Check # 1298 | Paid 10/13/08 |
| 08/19/08 | #4867678 | $2,651.57 | Check # 2068 | Paid 10/24/08 |

As per these recycled invoices Blackman was able to bill in excess of $3,958.20 in addition to
$3,345.77 from Check # 1329 which the invoices of that check in October 2008 were written off and
were unpaid but Blackman still accepted payment in November 2008.  Invoice #4863958 was paid
10/13/08 by Check # 1298 along with invoice #4825036 in the total check amount of $3,099.98.
Blackman recycled invoice # 4863958 but, did not recycle invoice # 4825036 (probably because the
invoice number was too old and would appear obvious). By not recycling invoice # 4825036 Blackman
acknowledges payment of both invoices. As a result of Blackman beginning the statement balance with
invoices that have already been paid, Blackman was able to charge in excess of $3,958.20 on the
October 31st, 2008 statement. Said statement was sent through the United States Mails with the intent
to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby
violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by
BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud
in violation of 18 U.S.C. § 1341, Frauds and swindles, stipulates "Whoever, having devised or
intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of
false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter,
give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin,
obligation, security, or other article, or anything represented to be or intimated or held out to be such
counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to
do, places in any post office or authorized depository for mail matter, any matter or thing whatever to
be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing
whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives
therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier
according to the direction thereon, or at the place at which it is directed to be delivered by the person to

whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

83. On or about November 30, 2008, LS receives a billing statement from Blackman via the U.S. Mails. The balance of the statement begins with a paid invoice recycled at a different amount. Blackman chooses particular invoices to recycle. The running balance contains several paid invoices. The false balance includes a Cash on Delivery (C.O.D.) made to appear as a account invoice. The excess charges total $15,795.26. Statement beginning balance should begin with the oldest open invoice #4945053 from 10/3/08 in the amount of $2,931.62. Invoice #4863958 was recycled from the amount $610.53 on the October 31st, 2008 statement to $427.13 on the November 30th, 2008 statement after it was paid on 10/13/08 Check # 1298. Blackman uses invoice #4863958 to begin the November 30th, 2008 statement. Invoice # 4876386 in the amount of $2,651.57 on 10/24/08 by Check # 2068 should not appear on November 30th, 2008 statement yet Blackman posts it as an open invoice. Invoice # 4876386 in the amount of $155.99 was paid on 10/17/08 with Check # 1312  along with two other invoices #4849614 and #4883898. However, #4876386 and #4883898 are posted on the November 30th, 2008 statement as open invoices. Yet, invoice #4849614 does not get recycled probably for the reason that the invoice number is too old and would raise suspicion. Also, invoice #4849614 is too low of an invoice number than that of the November 30th, 2008 statement that Blackman begins the statement balance with starting with invoice # 4863958.  Invoice #4900686 of 9/9/08 in the amount of $3,556.68 and #4913621 of 9/16/08 in the amount of $21.48 were both paid on the same Check #1331 on 11/6/08 and were recycled on the November 30th, 2008 statement. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a  C.O.D. invoice yet this invoice gets recycled on the November 30th, 2008 statement. Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349  in the total check amount of $2,982.23 but both invoices were recycled on the November 30th, 2008 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement. There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of

$1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check#1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement. Check #1329 is payment for invoices #4872963, #4885334, #4906005, #4899792, and #4912722 which all disappear from the October 2008 statement and future statements before payment was issued on 11/1/08. Hand written endorsement on Check, no account number with endorsement. As a result of Blackman beginning the statement balance with invoice #4863958 of 8/14/08, Blackman was able to charge in excess of $16,800.21 on the October 31st, 2008 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C.§ 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. §1341, Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal acts described herein constitutes a predicate act and  pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

84. On or about December 31, 2008, LS receives a billing statement through the U.S. Mails. The balance of the statement begins with a paid invoice recycled at a different amount. The running balance contains several paid invoices. The balance includes a C.O.D. Payment made to appear as an account

invoice. The balance includes the fictitious invoice. The excess charges total $18, 462.78. Statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98.Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $2,018.86. However invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331 in the total check amount of $3,578.16. Blackman is not only re-billing these two invoices, but Blackman begins the December 31st, 2008 statement with the already paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 to $2,018.86.  Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement and now on the December 31st, 2008 statement. Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349 in the total check amount of  $2,982.23 but both invoices were recycled on the November 30th, 2008 statement and now on the December 31st, 2008 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement as well as the December 31st, 2008 statement. There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check #1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement and now on the December 31st, 2008 statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602 from 10/20/08 in the amount of $1,990.07 were both paid by Check # 1409 on 12/26/08 in the total check amount of $4,751.32 however Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement. As a result of Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount, Blackman was able to charge in excess of $15,795.26 on the December 31st, 2008 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud  in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341, Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter,

give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

85. On or about January 31, 2009 LS receives a billing statement through the U.S. Mail sent by Blackman (U.S. Postal envelope still in possession). The balance of the statements begin with a paid invoice recycled a second time at a different amount. The running balance contains several paid invoices. The balance includes a C.O.D. Payment made to appear as an account invoice. The balance includes fictitious invoice. Blackman disguises payment of $4, 751.32 to appear as an adjustment that increases the balance while re-billing for the invoices respective to that payment. This ultimately leads to being the last transaction between LS and Blackman. Statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98.Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $1,447.88. However invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331 in the total check amount of $3,578.16. Blackman is not only re-billing these two invoices, but Blackman begins the January 31st, 2009 statement with the already paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 the original invoiced paid amount, to the recycled amount of $2,018.86 as per the December 31st, 2008 statement, to the recycled amount $1,447.88 as per this January 31st, 2009 statement. This is the second time this invoice is being re-billed at a different amount after it was paid. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, and now on the January 31st, 2009 statement. Invoice #4924955 of 9/23/08 in the

amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349  in the total check amount of $2,982.23 but both invoices were recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, and now on the January 31st, 2009 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement, the December 31st, 2008 statement and now on the January 31st, 2009. There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check #1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement, the December 31st, 2008 statement, and now on the January 31st, 2009  statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602 from 10/20/08 in the amount of $1,990.07 were both paid by Check # 1409 on 12/26/08 in the total check amount of $4,751.32 however Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement and the January 31st, 2009 statement. The December 31st, 2008 statement shows a balance of $64,844.21 and the January 31st, 2009 statement shows a balance of $70,024.55, the amount Blackman filed suit for against LS. The increase in balance is due to Blackman applying two adjustments #A421178 of 1/9/09 in the amount of $4,751.32 and #A421179 of 1/9/09 in the amount of $25.00. As per Blackman's codes shown at the bottom of each statement, the letter "A" is a code that represents "discount allowed." However, the adjustment #A421178 in the amount of $4,751.32  reflects the two invoices #4950021 and  #4982602 paid by Check # 1409 on 12/26/08 which this "adjustment" is recycled and disguised by Blackman as an "adjustment" enabling Blackman to further increase the running balance. This January 31st, 2009 statement shows how Blackman not only re-bills already paid invoices but, also disguises the invoices as "adjustments" on the same statement to charge for the same invoices twice in order to increase the balance. Invoice #5118042 of 1/8/09 in the amount of $539.11 along with invoice #5118455 of 1/8/09 in the amount of $31.87 were both paid on 1/7/09 by Check #2112 in the total check amount of $570.98 as a C.O.D. However Blackman recycles these two C.O.D. invoices to make them appear as on account invoices. 1/23/09 Invoice #5145639 in the amount of $76.86 was paid by Check 2127 as a C.O.D. This was the last purchase transaction by LS from Blackman, there were no further purchases or transactions by LS from this point on. As a result of Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount and because Blackman applies two adjustments that relate to two invoices already paid that increase the balance, Blackman was able to charge in excess of

$18,462.78 on the January 31st, 2009 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. §1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud  in violation of 18 U.S.C. §1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


86. On or about February 29, 2009, LS receives a billing statement from Blackman through the U.S. Mails (U.S. Postal envelope still in possession). The balance of the statement begins with paid invoices recycles a second time at a different amount. The running balance contains several paid invoices. The balance includes a C.O.D. Made to appear as an account invoice. The balance included a fictitious invoice. Blackman disguises payment of $4,751.32 to appear as an adjustment that increases balances while re-billing for the invoices respective to that payment. Statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98.Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $1,447.88. However invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331 in the total check amount of $3,578.16.Blackman is not only re-billing these two invoices, but Blackman begins the January 31st, 2009 statement with the already

paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 the original invoiced paid amount, to the recycled amount of $2,018.86 as per the December 31st, 2008 statement, to the recycled amount $1,447.88 as per the January 31st, 2009 statement and this February 29th, 2009 statement. This is the 2nd time this invoice is being re-billed at a different amount after it was paid. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, and now the February 29th, 2009 statement.  Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349 in the total check amount of $2,982.23 but both invoices were recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, and now on the February 29th, 2009 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009, and now the February 29th, 2009 statement.. There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice #4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check#1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, and now the February 29th, 2009 statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602 from 10/20/08 in the amount of $1,990.07 were both paid by Check # 1409 on 12/26/08 in the total check amount of $4,751.32 however Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement, the January 31st, 2009 statement, and now the the February 29th, 2009 statement. The December 31st, 2008 statement shows a balance of $64,844.21 and the January 31st, 2009  statement shows a balance of $70,024.55, the amount Blackman filed suit for against LS. The increase in balance is due to Blackman applying two adjustments #A421178 of 1/9/09 in the amount of $4,751.32 and #A421179 of 1/9/09 in the amount of $25.00. As per Blackman's codes shown at the bottom of each statement, the letter "A" is a code that represents "discount allowed." However, the adjustment #A421178 in the amount of $4,751.32  reflects the two invoices #4950021 and  #4982602 paid by Check # 1409 on 12/26/08 which this "adjustment" is recycled and disguised by Blackman as an "adjustment" enabling Blackman to further increase the running balance. The January 31st, 2009 statement and the February 29th, 2009 statement shows how Blackman not only re-bills already paid

invoices but, also disguises the invoices as "adjustments" on the same statement to charge for the same invoices twice in order to increase the balance. Invoice #5118042 of 1/8/09 in the amount of $539.11 along with invoice #5118455 of 1/8/09 in the amount of $31.87 were both paid on 1/7/09 by Check #2112 in the total check amount of $570.98 as a C.O.D. However, Blackman recycles these two C.O.D. invoices to make them appear as on account invoices.1/23/09 Invoice #5145639 in the amount of $76.86 was paid by Check 2127 as a C.O.D. This was the last purchase transaction by LS from Blackman, there were no further purchases or transactions by LS from this point on. As a result of Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount and because Blackman applies two adjustments that relate to two invoices already paid that increase the balance, Blackman was able to charge in excess of $18,462.78 on the February 29th, 2009 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud  in violation of 18 U.S.C. § 134. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

87. On or about March 31, 2009, LS receives a fraudulent billing statement to LS through the U.S.

Mails (U.S. Postal envelope still in possession). The balance of the statement begins with a paid invoice recycled a second time at a different. The running balance contains several paid invoices. The balance includes a C.O.D. Made to appear as an account invoice. The balance includes a fictitious invoice. Blackman disguises payment of $4, 751.32 to appear as an adjustment that increases balances while re-billing for the invoices respective to that payment. The excess charges total $18, 462.78. Statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98. Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $1,447.88. However invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331 in the total check amount of $3,578.16. Blackman is not only re-billing these two invoices, but Blackman begins the January 31st, 2009 statement with the already paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 the original invoiced paid amount, to the recycled amount of $2,018.86 as per the December 31st, 2008 statement, to the recycled amount $1,447.88 as per the January 31st, 2009 statement, the February 29th, 2009 statement and this March 31st, 2009 statement. This is the 2nd time this invoice is being re-billed at a different amount after it was paid. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, and now the March 31st, 2009 statement. Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349 in the total check amount of $2,982.23 but both invoices were recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, and now on the March 31st, 2009 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement and now on the March 31st, 2009 statement. There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check #1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, and now the March 31st, 2009 statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602

from 10/20/08 in the amount of $1,990.07 were both paid by Check # 1409 on 12/26/08 in the total check amount of $4,751.32 however Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, and now the March 31st, 2009 statement. The December 31st, 2008 statement shows a balance of $64,844.21 and the January 31st, 2009 statement shows a balance of $70,024.55, the amount Blackman filed suit for against LS. The increase in balance is due to Blackman applying two adjustments #A421178 of 1/9/09 in the amount of $4,751.32 and #A421179 of 1/9/09 in the amount of $25.00. As per Blackman's codes shown at the bottom of each statement, the letter "A" is a code that represents "discount allowed." However, the adjustment #A421178 in the amount of $4,751.32 reflects the two invoices #4950021 and  #4982602 paid by Check # 1409 on 12/26/08 which this "adjustment" is recycled and disguised by Blackman as an "adjustment" enabling Blackman to further increase the running balance. The January 31st, 2009 statement, the February 29th, 2009, and the March 31st, 2009 statement shows how Blackman not only re-bills already paid invoices but, also disguises the invoices as "adjustments" on the same statement to charge for the same invoices twice in order to increase the balance. Invoice #5118042 of 1/8/09 in the amount of $539.11 along with invoice #5118455 of 1/8/09 in the amount of $31.87 were both paid on 1/7/09 by Check #2112 in the total check amount of $570.98 as a C.O.D. However, Blackman recycles these two C.O.D. invoices to make them appear as on account invoices.1/23/09 Invoice #5145639 in the amount of $76.86 was paid by Check 2127 as a C.O.D. This was the last purchase transaction by LS from Blackman, there were no further purchases or transactions by LS from this point on. As a result of Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount and because Blackman applies two adjustments that relate to two invoices already paid that increase the balance, Blackman was able to charge in excess of $18,462.78 on the March 31st, 2009 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in

any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

88. On or about April 30, 2009, LS receives a fraudulent billing statement through the U.S. Mails from Blackman (U.S. Postal envelope still in possession). The balance begins with a paid invoice recycled a second time at a different amount. The running balance contains several paid invoices. The balance includes a C.O.D. payment made to appear as an account invoice. The balance includes a fictitious invoice. Blackman disguises payment of $4751.32 to appear as an adjustment that increases balances while re-billing for the invoices respective to that payment. Blackman changes balance with a mystery credit after filing suit against LS on April 24, 2009. The excess charges total $18, 462.78.  The statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98. Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $1,447.88. However invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331  in the total check amount of $3,578.16. Blackman is not only re-billing these two invoices, but Blackman begins the January 31st, 2009 statement with the already paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 the original invoiced paid amount, to the recycled amount of $2,018.86 as per the December 31st, 2008 statement, to the recycled amount $1,447.88 as per the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement and this April 30th, 2009 statement. This is the 2nd time this invoice is being re-billed at a different amount after it was paid. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, and now the April 30th, 2009

statement. Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349 in the total check amount of $2,982.23 but both invoices were recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, and now the April 30th, 2009 statement .Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, and now on the April 30th, 2009 statement. There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check #1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, and now the April 30th, 2009 statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602 from 10/20/08 in the amount of $1,990.07 were both paid by Check # 140 on 12/26/08 in the total check amount of$4,751.32.  However, Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, and now the April 30th, 2009 statement. The December 31st, 2008 statement shows a balance of $64,844.21 and the January 31st, 2009 statement shows a balance of $70,024.55, the amount Blackman filed suit for against LS. The increase in balance is due to Blackman applying two adjustments #A421178 of 1/9/09 in the amount of $4,751.32 and #A421179 of 1/9/09 in the amount of $25.00. As per Blackman's codes shown at the bottom of each statement, the letter "A" is a code that represents "discount allowed." However, the adjustment #A421178 in the amount of $4,751.32 reflects the two invoices #4950021 and #4982602 paid by Check # 1409("A3") on 12/26/08 which this "adjustment" is recycled and disguised by Blackman as an "adjustment" enabling Blackman to further increase the running balance. The January 31st, 2009 statement, the February 29th, 2009, the March 31st, 2009 statement, and the April 30th, 2009 statement shows how Blackman not only re-bills already paid invoices but, also disguises the invoices as "adjustments" on the same statement to charge for the same invoices twice in order to increase the balance. Invoice #5118042 of 1/8/09 in the amount of $539.11 along with invoice #5118455 of 1/8/09 in the amount of $31.87 were both paid on 1/7/09 by Check #2112 in the total check amount of $570.98 as a C.O.D. However, Blackman recycles these two C.O.D. invoices to make

them appear as on account invoices.1/23/09 Invoice #5145639 in the amount of $76.86 was paid by Check 2127 as a C.O.D. This was the last purchase transaction by LS from Blackman, there were no further purchases or transactions by LS from this point on. The April 30th, 2009 statement shows a "credit" applied on 4/7/09 reference #5119920 in the amount of $158.14. Blackman sued LS in the amount of $70,024.55 as per the March 31st, 2009 statement however, the

April 30th, 2009 statement shows a balance of $69,866.41. This credit should have never appeared due to the fact that LS's final transaction with Blackman was on 1/23/09. For some internal purpose, Blackman applied this credit however, it differs the balance from the April 30th, 2009 statement compared to the amount that Blackman filed suit for. As a result of Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount and because Blackman applies two adjustments that relate to two invoices already paid that increase the balance, Blackman was able to charge in excess of $18,462.78 on the April 30th, 2009 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes  mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."


89. On or about May 31, 2009, LS receives a fraudulent billing statement through the U.S mails sent by Blackman (U.S. Postal envelope still in possession). The balance begins with a paid invoice recycled a second time at a different amount. The running balance contains several paid invoices. The balance

includes a C.O.D. Payment made to appear as an account invoice. The balance includes a fictitious invoice. Blackman disguises payment of $4, 751.32 to appear as an adjustment that increases balances while re-billing for the invoices respective to that payment. Blackman changes balance with a mystery credit after filing suit on 4/24/09. The excess charges total $16, 101.06. Statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98. Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $1,194.93. However invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331 in the total check amount of $3,578.16. Blackman is not only re-billing these two invoices, but Blackman begins the January 31st, 2009 statement with the already paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 the original invoiced paid amount, to the recycled amount of $2,018.86 as per the December 31st, 2008 statement, to the recycled amount $1,447.88 as per the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now to the recycled amount $1,194.93 as per the June 30th, 2009 statement. This is the 3rd time this invoice is being re-billed at a different amount after it was paid. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now the June 30th, 2009 statement. Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349 in the total check amount of $2,982.23 but both invoices were recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now the June 30th, 2009 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement.  There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check #1351 in the total check amount of $3,386.99. All 3

invoices were recycled in the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602 from 10/20/08 in the amount of $1,990.07 were both paid by Check # 1409 on 12/26/08 in the total check amount of $4,751.32 however Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement. The December 31st, 2008 statement shows a balance of $64,844.21 and the January 31st, 2009 statement shows a balance of $70,024.55, the amount Blackman filed suit for against LS. The increase in balance is due to Blackman applying two adjustments #A421178 of 1/9/09 in the amount of $4,751.32 and #A421179 of 1/9/09 in the amount of $25.00. As per Blackman's codes shown at the bottom of each statement, the letter "A" is a code that represents "discount allowed." However, the adjustment #A421178 in the amount of $4,751.32  reflects the two invoices #4950021 and  #4982602 paid by Check # 1409 on 12/26/08 which this "adjustment" is recycled and disguised by Blackman as an "adjustment" enabling Blackman to further increase the running balance. The January 31st, 2009 statement, the February 29th, 2009, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement shows how Blackman not only re-bills already paid invoices but, also disguises the invoices as "adjustments" on the same statement to charge for the same invoices twice in order to increase the balance. Invoice #5118042 of 1/8/09 in the amount of $539.11 along with invoice #5118455 of 1/8/09 in the amount of $31.87 were both paid on 1/7/09 by Check #2112 in the total check amount of $570.98 as a C.O.D. However, Blackman recycles these two C.O.D. invoices to make them appear as on account invoices. 1/23/09 Invoice #5145639 in the amount of $76.86 was paid by Check 2127 as a C.O.D. This was the last purchase transaction by LS from Blackman, there were no further purchases or transactions by LS from this point on. The April 30th, 2009 statement shows a "credit" applied on 4/7/09 reference #5119920 in the amount of $158.14. Blackman sued LS in the amount of $70,024.55 as per the March 31st, 2009 statement however, the April 30th, 2009 statement shows a balance of $69,866.41. This credit should have never appeared due to the fact that LS's final transaction with Blackman was on 1/23/09. For some internal purpose, Blackman applied this credit however, it differs the balance from the April 30th, 2009 and the May 31st, 2009 statement compared to the amount that Blackman filed suit for. Now on the June 30th, 2009 statement, the balance is reduced to $69,613.46 due to Blackman recycling invoice #4900686 of 9/9/08 for a 3rd time to the amount of $1,194.93.As a result of

Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount and because Blackman applies two adjustments that relate to two invoices already paid that increase the balance, Blackman was able to charge in excess of $16,101.06 on the June 30th, 2009 statement. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."  The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

 90. On or about July 31, August 31, September 30, October 31, November 30,  and on December 31, 2009, LS received the same fraudulent billing statement that was sent on June 30, 2009.  Statement beginning balance should begin with the oldest open invoice #4963679 from 10/15/08 in the amount of $2,301.98.Blackman shows the statement beginning balance with invoice #4900686 of 9/9/08 in the amount of $1,194.93. However, invoice #4900686 in the amount of $3,556.65 along with invoice #4913621of 9/16/08 in the amount of $21.48 was paid on 11/6/08 Check #1331 in the total check amount of $3,578.16.Blackman is not only re-billing these two invoices, but Blackman begins the January 31st, 2009 statement with the already paid invoice #4900686 and further, Blackman recycled invoice #4900686 to appear at a different amount from $3,556.65 the original invoiced paid amount, to

the recycled amount of $2,018.86 as per the December 31st, 2008 statement, to the recycled amount $1,447.88 as per the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now to the recycled amount $1,194.93 as per the June 30th, 2009 statement. This is the 3rd time this invoice is being re-billed at a different amount after it was paid. Invoice #4917872 of 9/17/08 in the amount of $367.91 was paid on 9/16/08 by Check #1264 as a C.O.D. invoice yet this invoice was recycled on the November 30th, 2008 statement, the December 31st,  2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now the June 30th, 2009 statement. Invoice #4924955 of 9/23/08 in the amount of $2,802.00 and invoice #4943924 of 9/30/08 in the amount of $180.23 were both paid on 11/17/08 by Check #1349 in the total check amount of  $2,982.23 but both invoices were recycled on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now the June 30th, 2009 statement. Invoice #4932912 of 9/26/08 in the amount of $2,266.41 as per Blackman statements appears on September 2008 statement, disappears on October 2008 statement, then reappears on the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement.  There is no record of such invoice so, there was no payment made, therefore this invoice is fictitious. Invoice #4939966 of 9/30/08 in the amount of $1,298.41, invoice # 4943048 of 9/30/08 in the amount of $1,977.20, and invoice #4944885 of 10/2/08 in the amount of $111.38 were all paid on 11/20/08 by Check #1351 in the total check amount of $3,386.99. All 3 invoices were recycled in the November 30th, 2008 statement, the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement. Invoice #4950021 from 10/7/08 in the amount of $2,761.31 along with invoice #4982602 from 10/20/08 in the amount of $1,990.07 were both paid by Check # 1409 on 12/26/08 in the total check amount of $4,751.32 however Blackman shows both of these invoices as unpaid open invoices on the December 31st, 2008 statement, the January 31st, 2009 statement, the February 29th, 2009 statement, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement. The December 31st, 2008 statement shows a balance of $64,844.21 and the January 31st, 2009 statement shows a balance of $70,024.55, the amount Blackman filed suit for against LS. The increase in balance is due to Blackman applying two adjustments #A421178 of

1/9/09 in the amount of $4,751.32 and #A421179 of 1/9/09 in the amount of $25.00. As per Blackman's codes shown at the bottom of each statement, the letter "A" is a code that represents "discount allowed." However, the adjustment #A421178 in the amount of $4,751.32 reflects the two invoices #4950021 and  #4982602 paid by Check # 1409 on 12/26/08 which this "adjustment" is recycled and disguised by Blackman as an "adjustment" enabling Blackman to further increase the running balance. The January 31st, 2009 statement, the February 29th, 2009, the March 31st, 2009 statement, the April 30th, 2009 statement, the May 31st, 2009 statement, and now on the June 30th, 2009 statement shows how Blackman not only re-bills already paid invoices but, also disguises the invoices as "adjustments" on the same statement to charge for the same invoices twice in order to increase the balance. Invoice #5118042 of 1/8/09 in the amount of $539.11 along with invoice #5118455 of 1/8/09 in the amount of $31.87 were both paid on 1/7/09 by Check #2112 in the total check amount of $570.98 as a C.O.D. However, Blackman recycles these two C.O.D. invoices to make them appear as on account invoices. On 1/23/09, invoice #5145639 in the amount of $76.86 was paid by Check 2127 as a C.O.D. This was the last purchase transaction by LS from Blackman, there were no further purchases or transactions by LS from this point on. The April 30th, 2009 statement shows a "credit" applied on 4/7/09 reference #5119920 in the amount of $158.14. Blackman sued LS in the amount of $70,024.55 as per the March 31st, 2009 statement however, the April 30th, 2009 statement shows a balance of $69,866.41. This credit should have never appeared due to the fact that LS's final transaction with Blackman was on 1/23/09. For some internal purpose, Blackman applied this credit however, it differs the balance from the April 30th, 2009 and the May 31st, 2009 statement compared to the amount that Blackman filed suit for. Now on the June 30th, 2009 statement, the balance is reduced to $69,613.46 due to Blackman recycling invoice #4900686 of 9/9/08 for a 3rd time to the amount of $1,194.93.As a result of Blackman beginning the statement balance with a recycled invoice #4900686 of 9/9/08 at a recycled amount and because Blackman applies two adjustments that relate to two invoices already paid that increase the balance, Blackman was able to charge in excess of $16,101.06 on the June 30th, 2009 statement. From this June 30th, 2009 Statement, all statements through to the December 31st, 2009 statement repeat the above information.  Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell,

dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act. The aforementioned monthly fraudulent billing statements sent through the mail by Blackman imposed excess charges in amount to a total of $246,971.49

91. Based on the Lone Star Home Heating Ledger from August 31, 2006 through October 15, 2008, Blackman Plumbing Supply Company's billing statements for Lone Star Home Heating under account number 11182 and fraudulent invoices from during that time period thereof, copies of canceled checks, including copies of Blackman's endorsement for all recycled, re-billed and disappearing invoices paid but not acknowledged through the U.S. Mails were committed as a scheme to defraud thereby constituting a predicate act of mail fraud pursuant to 18 U.S.C. 1341 and wire fraud pursuant to 18 U.S.C. 1343. Phantom recycled service charges of 2% per month billing statement was fraudulent imposed and constituted criminal usury of over 24% per year for over a two year period as a predicate act to defendant's enterprise and racketeering activity.

92. On or about August 31, 2006, Blackman Supply Plumbing Company sent a fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 for an amount of $371.13 with an invoice number of the same with a balance ending at $32, 488.78. At the bottom of said statement (as it indicates on all statements), Blackman defines at the bottom of the billing statement SC to stand for "Service Charge". Below it states that service charges are imposed at 2%. Furthermore, in said billing statements as with all others, Blackman lists definitions for the branches

that have in the New York Metropolitan Area, i.e. FLU stands for Flushing, HIX stands for Hicksville, HUN stands for Huntington, LYN stands for Lynbrook, MED stands for Medford and MIN stands for Mineola and QV stands for Queens Village. At the column titled "Branch "on said statement it does not indicate an abbreviation for any of Blackman's branches and is left black.

93. On or about April 30, 2006, Blackman Supply Plumbing Company sent a fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC25130. The letter S, as indicated below every billing statement Blackman stands for "Service Charge". Blackman imposed a phantom service charge in the amount of $287.29 for a service charge allegedly that originated on said date and the branch column left blank and a statement balance of $19, 807.33. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1343.18 U.S.C. §1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."

The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

94. On or about May  31, 2006, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC25130. The letter S, as indicated below every billing statement Blackman sends out stands for "Service Charge". Blackman imposed a phantom service charge in the amount of $287.29 for a service charge allegedly that originated on April 30, 2006 and the branch column left blank and a statement balance of $21, 275.53. On the same billing statement, Blackman again  imposed a phantom service charge in the amount of $342.35 for a service charge allegedly that allegedly originated on said date with a reference number of SC26097 and the branch column left blank and a statement balance of $21, 275.53. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second

Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

95. On or about June 30, 2006, Blackman Supply Plumbing Company sent a fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC25130. The letter S, as indicated below every billing statement Blackman sends out stands for "Service Charge". Blackman imposed a phantom service charge in the amount of $287.29 for a service charge allegedly that originated on April 30, 2006 and the branch column left blank and a statement balance of $18, 651.96. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $342.35 for a service charge allegedly that allegedly originated on said date and the branch column left blank and a statement balance of $21, 275.53. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $342.35 for a service charge allegedly that allegedly originated on May 31, 2006 with a reference number of SC26097 and the branch column left blank and a statement balance of $18, 651.96. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $210.64 for a service charge allegedly that allegedly originated on said date with a reference number of SC27061 and the branch column left blank and a statement balance of $18, 651.96. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to

do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."   The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

96. On or about July 31, 2006, 2006, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC25130. The letter S, as indicated below every billing statement Blackman sends out stands for "Service Charge". Blackman imposed a phantom service charge in the amount of $287.29 for a service charge allegedly that originated on said date and the branch column left blank and a statement balance of $22, 832.20. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $342.35 for a service charge allegedly that allegedly originated on said date with a reference number of SC26097 that allegedly originated on May 31, 2006 and the branch column left blank and a statement balance of $222, 832.20. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $210.64 for a service charge allegedly that allegedly originated on June 30, 2006 with a reference number of SC27061 and the branch column left blank and a statement balance of $22, 832.20. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on said date with a reference number of SC28055 and the branch column left blank and a statement balance of $22, 832.20. Said statement was sent through the United States Mails with the intent to defraud constituting the violation

as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

97. On or about August 31, 2006, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC25130. The letter S, as indicated below every billing statement Blackman sends out stands for "Service Charge". Blackman imposed a phantom service charge in the amount of $287.29 for a service charge allegedly that originated on said date and the branch column left blank and a statement balance of $32, 488.78. On the same billing statement, Blackman again imposed a phantom service charge in the amount of

$342.35 for a service charge allegedly that allegedly originated on said date with a reference number of SC26097 and the branch column left blank and a statement balance of $32, 488.78. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $210.64 for a service charge allegedly that allegedly originated on said date with a reference number of SC27061 and the branch column left blank and a statement balance of $32, 488.78. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on July 31, 2006 with a reference number of SC28055 and the branch column left blank and a statement balance of $32, 488.78. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting

interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

98. On or about September 30, 2006, Blackman Supply Plumbing Company sent a fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $33, 374.05.  In addition, Blackman placed a "service charge" in the same fraudulent billing statement a reference number SC29932 in the amount of $475.55 and the branch column left blank. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $210.64 for a service charge allegedly that allegedly originated on June 30, 2006, with a reference number of SC27061 and the branch column left blank and a statement balance of $33, 374.05. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on July 31, 2006 with a reference number of SC28055 and the branch column left blank and a statement balance of $33, 374.05. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree

when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

99. On October 31, 2006 Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $ 28, 941.05 and the branch column left blank.  In said fraudulent billing statement, Blackman also imposed an alleged service charge of $475.55, reference number SC29932 and the branch column left blank. Said phantom service charge originated on September 30, 2006. On the same statement, Blackman imposes another phantom service charge, reference number SC 30874 in the amount of $567.48 and originated on said date of the statement and with the branch column left blank. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on July 31, 2006 with a reference number of SC28055 and the branch column left blank and a statement balance of $28, 941.53. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1343.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any

such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


100.. On November 30, 2006, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $29, 520.36 and the branch column left blank. In the same billing statement, Blackman imposed a phantom service charge of $475.55 with a reference number of SC29932 again, which originated on September 30, 2006. Blackman imposes another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on said date. On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the branch column left blank. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on July 31, 2006 with a reference number of SC28055 and the branch column left blank and a statement balance of $29,520.36. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any

scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

101. On December 31, 2006, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $30,110.77. On that same billing statement, Blackman imposed a phantom service charge again, reference number SC 29932, in the amount of $475.55 again recycled. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same statement, Blackman imposes another phantom service charge, reference number SC 30874 in the amount of $567.48 and originated on said date of the statement. On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the

branch column left blank. On the same dated billing statement, Blackman fraudulent imposes a phantom service charge, reference number SC 32855 in the amount of $590.41 originated on said date. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on July 31, 2006 with a reference number of SC28055 and the branch column left blank and a statement balance of $30,110.77. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud  and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1343.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

102. On January 31, 2007, Blackman Supply Plumbing Company sent a  fraudulent billing statement

through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $31, 071.79. in the same billing statement, Blackman again imposed a phantom service charge of $475.55 again, reference number SC29932, and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006 . On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the branch column left blank. On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the branch column left blank. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on that date. On the same billing statement, Blackman again imposed a phantom service charge in the amount of $222.57 for a service charge allegedly that allegedly originated on July 31, 2006 with a reference number of SC28055 and the branch column left blank and a statement balance of $31, 071.79. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341.

18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the

direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

103. On April 30, 2007, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $29, 238.97. On that same billing statement, Blackman imposed a phantom service charge again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the branch column left blank. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. which originated on said date and and the branch code column left blank. On the

same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on said date with the branch column  on the statement left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

103. On May 31, 2007, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance

ending at $28, 803.75. On that same billing statement, Blackman imposed a phantom service charge

again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch

column left black. Said service charge originated on September 30, 2006. Blackman again imposed

another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which

originated on November 30, 2006. On the same statement, Blackman imposes another phantom

recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on

October 31, 2006 and with the branch column left blank. On the same dated billing statement,

Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in

the amount of $590.41 and the branch code column left blank and invoice originated on December 31,

2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge,

reference number SC 33780 in the amount of $620.22 and the branch code column left blank and

invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes

another phantom service charge, reference number SC 34694 in the amount of #561.44, which

originated on February 28, 2007 and with the branch column left blank. On the same billing statement,

Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the

amount of $571.88. which originated on March 31, 2007 and the branch code column left blank. On the

same billing statement, Blackman fraudulently imposes another phantom service charge, reference

number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch

column on the statement left blank. On the same billing statement, Blackman fraudulently imposes

another phantom service charge, reference number SC 37402 in the amount of $564.78 which

originated on said date  and the branch code column left blank. Said statement was sent through the

United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to

commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said

billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and

SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and

swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud,

or for obtaining money or property by means of false or fraudulent pretenses, representations, or

promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or

procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or

anything represented to be or intimated or held out to be such counterfeit or spurious article, for the

purpose of executing such scheme or artifice or attempting so to do, places in any post office or

authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal

Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by

any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

104. On June 30, 2007,  Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $27, 339.83. On that same billing statement, Blackman imposed a phantom service charge again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the branch column left blank. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement,

Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. which originated on March 31, 2007 the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on  said date with the branch code column on the statement left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act .18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned

criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


105. On July 31, 2007,  Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $26, 891.63. On the same billing statement, imposed a fraudulent alleged "discount allowed" of $25.00. The billing statement indicates reference number A419833. Under Blackman's definitions of codes on all of its billing statements, "A" stands for "Discount allowed. However, the billing statement clearly shows that Lone Star's balance increased to $25.00 from $26, 339.83 to $26, 364.83. On that same billing statement, Blackman imposed a phantom service charge again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same statement, Blackman imposes another phantom recycled service charge, reference number SC 30874 in the amount of $567.48 and originated on October 31, 2006 and with the branch column left blank. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. \which originated on March 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge,

reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  39214 in the amount of $526.80 which originated on said date and the branch code column left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

106. On August 31, 2007, Blackman Supply Plumbing Company sent a fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $24, 825.63. On that same billing statement, Blackman imposed a phantom service charge again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. which originated on March 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 38299 in the amount of $536.08 which originated on June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same statement, Blackman imposed a fraudulent alleged "discount allowed" of $25.00. The billing statement indicates reference number A419833. Under Blackman's definitions of codes on all of its billing statements, "A" stands for "Discount allowed. However, the billing statement clearly shows that Lone Star's balance increased to

$25.00 from  $23, 272.35 to $23, 297.35. On the same billing statement again imposes a false "Discount Allowed" under reference number A419958 for $500.00. However, Lone Star's balance increases rather that decreases from a balance of $23, 824.15 to $24, 324.15  On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A419959 indicating an original date of August 27, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $24, 324.15 to $24, 349.15. Said fraudulent statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud  and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."   The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c)**.**

107. On September 30, 2007, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $26, 781.22. On that same billing statement, Blackman imposed a phantom service charge again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. which originated on March 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank.  On the same billing statement, Blackman fraudulently imposed another phantom service charge, reference number SC  41099 in the amount of $456.51 which originated on said date and the branch code column left blank On the same statement, Blackman imposed  a fraudulent alleged "discount allowed" of $25.00. The billing statement indicates

reference number A419833. Under Blackman's definitions of codes on all of its billing statements, "A" stands for "Discount allowed. However, the billing statement clearly shows that Lone Star's balance increased to $25.00 from $21, 772.35 to $21, 797.35. On the same billing statement again imposes a false "Discount Allowed" under reference number A419958 for $500.00. However, Lone Star's balance increases rather that decreases from a balance of $22, 324.15 to $22, 824.15. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A419959 indicating an original date of August 27, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $22, 824.15 to $22, 849.15. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A420027 indicating an original date of September 17, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $ 23, 825.63 to $23, 850.63. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A420028 indicating an original date of September 17, 2007. Instead of allowing a discount of $567.48, Blackman actually increases Lone Star's balance from $23, 850.63 to $24, 418.11. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A420038 indicating an original date of September 20, 2007. Instead of allowing a discount of $2,381.60, Blackman actually increases Lone Star's balance from $24, 418.11 to $26, 799.71. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A420039 indicating an original date of September 20, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $26, 799.71 to $26, 824.71. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A420026 indicating an original date of September 17, 2007. Instead of allowing a discount of $500.00, Blackman actually increases Lone Star's balance from $23, 325.63 to $23, 825.63. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1343.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to

do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

108. On October 31, 2007, Blackman Supply Plumbing Company sent a  fraudulent billing statement through the U.S. Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC29008 again and for an amount of $371.13 which originated on August 31, 2006, with an invoice number of the same with a balance ending at $26, 781.22. On that same billing statement, Blackman imposed a phantom service charge again, with reference number SC 29932, in the amount of $475.55 again recycled and with the branch column left black. Said service charge originated on September 30, 2006. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement, Blackman fraudulently

imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. which
originated on March 31, 2007 and the branch code column left blank. On the same billing statement,
Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the
amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left
blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled
service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31,
2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently
imposes another phantom recycled service charge, reference number SC 37402 in the amount of
$564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing
statement, Blackman fraudulently imposes another phantom service charge, reference number SC
38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on
the statement left blank. On the same billing statement, Blackman fraudulently imposed another
phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which
originated on July 31, 2007 and the branch code column left blank. On the same billing statement,
Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124
in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank.
On the same billing statement, Blackman fraudulently imposed another phantom recycled service
charge, reference number SC  41099 in the amount of $456.51 which originated on September 30, 2007
and the branch code column left blank. On the same statement, Blackman imposed  a fraudulent alleged
"discount allowed" of $25.00. The billing statement indicates reference number A419833. Under
Blackman's definitions of codes on all of its billing statements, "A" stands for "Discount allowed.
However, the billing statement clearly shows that Lone Star's balance increased to $25.00 from $21,
272.35. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount
Allowed" under reference  number A419959 indicating an original date of August 27, 2007. Instead of
allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $21, 824.15 to
$21, 849.15. On the same billing statement, Blackman again fraudulently imposes a phantom
"Discount Allowed" under reference  number A419959 indicating an original date of September 17,
2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from
$22, 325.63 to $22, 350.63. On the same billing statement, Blackman again fraudulently imposes a
phantom "Discount Allowed" under reference  number A420028  indicating an original date of
September 17, 2007. Instead of allowing a discount of $567.48, Blackman actually increases Lone
Star's balance from $22, 350.63 to $22, 918.11. On the same billing statement, Blackman again
fraudulently imposes a phantom "Discount Allowed" under reference  number A420038  indicating an

original date of September 20, 2007. Instead of allowing a discount of $2,381.60, Blackman actually increases Lone Star's balance from $22, 918.11 to $25, 299.71.On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference  number A420039  indicating an original date of September 20, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $25, 299.71 to $25, 324.71. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud  and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

109. On November 30, 2007, Blackman Plumbing Supply Company sent a fraudulent billing statement

through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 29932 again and for an amount of $475.55 which originated on September 30, 2006, with an invoice number of the same with a balance ending at $23, 257.69. Blackman again imposed another phantom recycled service charge, reference number SC 31858 in the amount of $578.83, which originated on November 30, 2006. On the same dated billing statement, Blackman fraudulent imposes another phantom recycled service charge, reference number SC 32855 in the amount of $590.41 and the branch code column left blank and invoice originated on December 31, 2006. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 33780 in the amount of $620.22 and the branch code column left blank and invoice originated on January 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 34694 in the amount of #561.44, which originated on February 28, 2007 and with the branch column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 35604 in the amount of $571.88. which originated on March 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  41099 in the amount of $456.51 which originated on September 30, 2007 and the branch code column left blank On the same statement, Blackman imposed  a fraudulent alleged "discount allowed" of $25.00. The billing statement indicates reference number A419833. Under Blackman's definitions of codes on all of its billing statements, "A" stands for "Discount allowed. However, the billing statement clearly shows that Lone Star's balance increased to $25.00 from  $7, 969.01 to $7994.01. On the same billing statement, Blackman again fraudulently

imposes a phantom "Discount Allowed" under reference  number A419959 indicating an original date of August 27, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $8, 520.81 to $8, 545.81. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference  number A419959 indicating an original date of September 17, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $9, 022.29 to $9,047.29. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference  number A420028  indicating an original date of September 17, 2007. Instead of allowing a discount of $567.48, Blackman actually increases Lone Star's balance from $9, 047.29 to $9, 614.77. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference  number A420038 indicating an original date of September 20, 2007. Instead of allowing a discount of $2,381.60, Blackman actually increases Lone Star's balance from $9, 614.77  to $11, 996.37. On the same billing statement, Blackman again fraudulently imposes a phantom "Discount Allowed" under reference number A420039  indicating an original date of September 20, 2007. Instead of allowing a discount of $25.00, Blackman actually increases Lone Star's balance from $11, 996.37 to $12, 021.37. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40

Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

110. On December 31, 2007, Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 35604 in the amount of $312.17 with a date originated on March 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC 38299 in the amount of $536.08 which originated on June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 41099 in the amount of $456.51 which originated on September 30, 2007 and the branch code column left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or

to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

111. On January 31, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 35604 in the amount of $141.86 with a date originated on March 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which

originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  41099 in the amount of $456.51 which originated on September 30, 2007 and the branch code column left blank Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting

interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

112. On February 29, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 35604 in the amount of $141.86 with a date originated on March 31, 2007. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  36478 in the amount of $573.31 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  41099 in the amount of $456.51 which originated on September 30, 2007 and the branch code column left blank Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. The aforementioned billing statement described herein was sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be

delivered by mail or such carrier according to the direction thereon, or at the place at which it is
directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined
under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates
on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation
of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit
thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do
so, he knowingly charges, takes or receives any money or other property as interest on the loan or
forbearance of any money or other property, at a rate exceeding twenty-five per annum or the
equivalent for a longer or shorter period."  The aforementioned criminal acts described herein
constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined
in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and
Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18
U.S.C. §1961 (a), (b), (c).


113. On March 31, 2008, Blackman Plumbing Supply Company sent a fraudulent billing statement
through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182.
Said fraudulent billing statement indicates a reference number of SC 36478 in the amount of $415.17
which originated on April 30, 2007 with the branch column on the statement left blank. On the same
billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference
number SC 37402 in the amount of $564.78 which originated on May 31, 2007 and the branch code
column left blank. On the same billing statement, Blackman fraudulently imposes another phantom
service charge, reference number SC  38299 in the amount of $536.08 which originated on  June 30,
2007 with the branch code column on the statement left blank. On the same billing statement,
Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214
in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On
the same billing statement, Blackman fraudulently imposed another phantom recycled service charge,
reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the
branch code column left blank. On the same billing statement, Blackman fraudulently imposed another
phantom recycled service charge, reference number SC  41099 in the amount of $456.51 which
originated on September 30, 2007 and the branch code column left blank. Said statement was sent
through the United States Mails with the intent to defraud constituting the violation as mail fraud and
conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18
U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN,

INC. and SCHIRANO and constitutes MAIL fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. § 1341.

Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

114. On April 30, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 36478 in the amount of $115.17 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $64.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement,

Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  41099 in the amount of $456.51 which originated on September 30, 2007 and the branch code column left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

115. On May 31, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 36478 in the amount of $115.17 which originated on April 30, 2007 with the branch column on the statement left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $64.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom recycled service charge, reference number SC 37402 in the amount of $64.78 which originated on May 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposes another phantom service charge, reference number SC  38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  41099 in the amount of $456.51 which originated on September 30, 2007 and the branch code column left blank Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud  and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341 and constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be

sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

116. On July 31, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article,

for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

117. On August 31, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom service charge, reference number SC 40124 in the amount of $476.48 which originated on said date and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank .Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud  and as scheme to defraud

the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

118. On September 30, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 38299 in the amount of $536.08 which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which

originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof.  "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period."  The aforementioned criminal acts described herein constitutes a predicate act and a  pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

119.  On October 31, 2008,  Blackman Plumbing Supply Company sent a fraudulent billing statement through the United States Mails to the plaintiff Lone Star Home Heating regarding its account #11182. Said fraudulent billing statement indicates a reference number of SC 38299 in the amount of $536.08

which originated on  June 30, 2007 with the branch code column on the statement left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC  39214 in the amount of $526.80 which originated on July 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. On the same billing statement, Blackman fraudulently imposed another phantom recycled service charge, reference number SC 40124 in the amount of $476.48 which originated on August 31, 2007 and the branch code column left blank. Said statement was sent through the United States Mails with the intent to defraud constituting the violation as mail fraud and conspiracy to commit mail fraud and as scheme to defraud the plaintiffs and thereby violating 18 U.S.C. 1341. Said billing statement  sent though the mail and is an overt criminal act by BLACKMAN, INC. and SCHIRANO and constitutes mail fraud in violation of 18 U.S.C. § 1341.18 U.S.C. § 1341. Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of

an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

120. On or about February 6, 2009, LS Home Services receives a letter through the U.S. Mail, postmarked February 4, 2009, from Blackman and addressed to "LS HOME SERVICES, INC. P.O. BOX #57081, Whitestone, N.Y. 11357-0481 Attn: Chris Harris,Account# 20735, Amount $70,024.55. The aforementioned letter stated in sum and substance:

"Dear Mr. Harris,

Despite our efforts to work with your company, we have not received your payment, nor have we heard from you in reference to your outstanding debt with us.

Please be advised we are active members of various credit associations. It is imperative that payments be made within 10 days of this letter. Your failure to remit $70,024.55 by February 16th, 2009 will leave us no alternative but to consider further action to protect our interest. We trust you will respond to the seriousness of this request.

Lastly, and to highlight the importance of this correspondence, it should be noted we have personal guaranties on file which is an avenue we will pursue to collect this debt.

Very Truly Yours,

Mike Schirano
Credit Manager."

In the following letter, it states LS Home Services, Inc. account number but with a fictitious name. The aforementioned letter described herein was sent via the U.S. Mail and is an overt criminal act by SCHIRANO and BLACKMAN, INC. and constitutes mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1341 Frauds and swindles, stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held

out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree and conspiracy to commit thereof. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

121. During the course of BEDFORD's employment by LONE STAR, LS, LaCERTOSA and HEATSERVE, BEDFORD became privy to private personal information concerning all of the members of LaCERTOSA's immediate family, which information was and is susceptible of use to the disadvantage of and injury to LaCERTOSA and members of his family by persons motivated to do so.

122. On or about April 24, 2009, BLACKMAN INC. filed a frivolous complaint as plaintiff against LS and LaCERTOSA as defendants in the Supreme Court of New York, Suffolk County, under index # 09-15400, which action was dismissed by the Court at a status conference called by the Court on April 30, 2010, by reason of the false statement by counsel for BLACKMAN INC. that counsel for LS and LaCERTOSA had consented to an adjournment to the status conference, by counsel for BLACKMAN. INC. (Michael L. Weinstein & Associates by Douglas Thaler). In the aforementioned lawsuit, Defendant Blackman submitted the fraudulent invoices previously mentioned herein as an exhibit. The aforementioned act described herein violates 18 U.S.C.A. § 1503, Influencing or injuring officer or juror generally, and conspiracy to commit thereof which stipulates "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede

any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, *or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection* (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case." The imposition of usurious interest rates on "service" charges that were fraudulent from the outset as previously mentioned constitutes violation of New York State Penal Law §190.40 Criminal Usury in the Second Degree. "A person is guilty of Criminal Usury in the Second Degree when, not being authorized to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per annum or the equivalent for a longer or shorter period." The aforementioned criminal acts described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c). The aforementioned criminal act described herein constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).


123. In said complaint, BLACKMAN INC. alleged that LS and LaCERTOSA were indebted to BLACKMAN INC. in the sum of $70,024.55 for goods purchased by LS from BLACKMAN INC. As to the allegation with respect to LS, such allegation is false, and was known by BLACKMAN INC. to be Blackman INC.'s false claim was based upon bogus invoices listed on BLACKMAN INC's monthly statements that were regularly and routinely sent by it and its co-conspirators through the United States mail to LS HOME SERVICES INC., P.O. BOX 570481, Whitestone, New York 11357-0481 in

violation of 18 U.S.C. § 1341. The actions of BLACKMAN INC. and its co-conspirators constituted a patent attempt to "shake down" and extort money from plaintiffs through means of coercion and intimidation.

124. In said complaint, BLACKMAN INC. further alleged that LaCERTOSA was personally liable to BLACKMAN INC. for the indebtedness of LS and LONE STAR to BLACKMAN INC. by reason of having personally guaranteed the payment of LONE STAR's and LS's indebtedness to BLACKMAN INC. Said claim against LaCERTOSA was based solely upon an alleged guarantee by LaCERTOSA of payment of the indebtedness of LS due to BLACKMAN INC. However, as BLACKMAN INC. knew, LaCERTOSA never signed any guarantee of the indebtedness of LS. In furtherance to the collusion between BEDFORD, SCHIRANO and BLACKMAN INC., LaCERTOSA filled out a sample of such guarantee which LaCERTOSA forwarded to BEDFORD for BEDFORD's approval however, LaCERTOSA never signed any official guarantee nor sent it directly to BLACKMAN INC. nor SCHIRANO. The only way BLACKMAN INC. or SCHIRANO could have come in possession of such guarantee would be through BEDFORD with the sample that LaCERTOSA forwarded to BEDFORD which such acts of BLACKMAN INC., SCHIRANO, and BEDFORD constitute a predicate act of obstruction of justice within the meaning of 18 U.S.C. § 1961(5) along with the alleged predicate act of 18 U.S.C. § 1341 thereby constitute part of the pattern of racketeering activity on the part of the Blackman enterprise.

125. In addition to the aforesaid unlawful acts, BLACKMAN INC. and its co-conspirators, in pursuance of their conspiracy and advancement of the enterprise, imposed charges of interest at rates exceeding 24%, in direct violation of §190.42 of the New York Criminal Penal Code, Criminal Usury in the Second Degree, which limits the charging of interest to 24% per annum. However, BLACKMAN fraudulently imposed usury rates on service charges for invoices that had already been paid by LS and numerous fictitious invoice charges for alleged materials that LS never ordered or received. As a consequence of the usurious charges, any agreements, contracts or guarantees between LONE STAR, LS, and BLACKMAN INC. are void and unenforceable by BLACKMAN INC., by reason of which, LONE STAR, and LS have no liability whatsoever to BLACKMAN INC.

126. Said claim against LaCERTOSA is based solely upon an alleged guarantee by LaCERTOSA of payment of the fraudulent indebtedness of LS due to plaintiff.

127. The making by BLACKMAN INC. of the false allegations in its complaint constitute a predicate act of obstruction of justice within the meaning of 18 U.S.C. § 1961(5). Such predicate act, together with the predicate acts alleged in paragraph 28, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

128. On or about November 7, 2007, SCHIRANO strongly urged and caused LONE STAR and LACERTOSA, to hire BEDFORD. He did so based upon the representation of SCHIRANO and with the understanding that BEDFORD was "like a financial guy" a "business growth turnaround expert," "banking expert" and "author of newsletters within the banking industry" and who was familiar with LaCERTOSA's type of business. By his acceptance of employment with LONE STAR and the continuation of his employment by LS, BEDFORD assumed a duty of loyalty to LS, LONE STAR and LaCERTOSA. From the start of his employment, however, BEDFORD was in breach of that duty of loyalty by reason of his concealment from LS and LaCERTOSA, its sole shareholder, of his relationship to BLACKMAN, INC. and was in fact in collusion and conspiracy to destroy plaintiff's business for his economic benefit as well as Blackman, Inc, the principal supplier to LONE STAR and LS. By such concealment and by his subsequent acts, BEDFORD breached not only his fiduciary duty and loyalty to LS, LONE STAR, and LACERTOSA but was in fact installed as a "double agent" by BLACKMAN, Inc. to conspire to injure it's business and gain dominion and control it of it as well

129. One of such acts of BEDFORD breaching his fiduciary duty of loyalty to LS, LONE STAR, and LACERTOSA by reason of his concealment of BEDFORD's relationship to BLACKMAN INC. and its co-conspirators is evidenced in the voice mail message of March 31st, 2009 at 1:53 pm. which this voice mail message is certified by CBW Productions, LLC, a professional audio recording company. This message was left on LaCERTOSA's voice mail by BEDFORD after BEDFORD had already broken ties with LaCERTOSA as of February 2009. Bedford informed LACERTOSA that BLACKMAN INC. had already submitted the information concerning LS's indebtedness to BLACKMAN INC. to its attorneys, Michael L.Weinstein & Associates to commence action against LS which is evidenced by a certified compact disc from CBW Productions, order #121973. In the same voice mail message, BEDFORD stated to LACERTOSA that he could talk to Mike (SCHIRANO) in regards to the lawsuit but, LACERTOSA would have to call BEDFORD that day. BEDFORD could only have learned such information through BLACKMAN INC. or its co-conspirators being that LaCERTOSA had not been in contact with BEDFORD since February 2009. BEDFORD was responsible for handling many of LaCERTOSA's business and personal issues and yet, in BEDFORD's

voice mail message of March 31st, 2009, BEDFORD only shows an effort to see that LaCERTOSA would pay BLACKMAN INC. and doesn't even show concern for the other issues such as LaCERTOSA's taxes, LaCERTOSA's mortgage, LaCERTOSA's loss of his bank account at Washington Mutual which was due to BEDFORD's instructions to deceive banks, or LaCERTOSA's loss of use of his credit card terminal which was also due to BEDFORD's instructions to deceive banks, all said issues were of BEDFORD's responsibility but BEDFORD only shows concern in the interest of BLACKMAN INC. for the benefit of the Blackman enterprise and BEDFORD, himself.  One of such acts involved a "Personal Guarantee" that BEDFORD sought to have LaCERTOSA execute and deliver to BLACKMAN INC. with respect to the indebtedness of LS to BLACKMAN INC. LaCERTOSA refused to sign the guarantee presented to him by BEDFORD and never signed that or any other guarantee. Upon pressure applied by BEDFORD, LaCERTOSA admonished BEDFORD that he allowed a third party to fill out and affix a semblance of his signature to the document proffered to him by BEDFORD. However, he expressly directed BEDFORD not to deliver the purported guarantee to BLACKMAN INC., and BEDFORD assured him that he would not do so. On information and belief, BEDFORD, in direct contravention and violation of LaCERTOSA's explicit direction not to deliver the spurious guarantee to plaintiff, BEDFORD did so, in furtherance of his conflicting loyalty to plaintiff which BEDFORD had faithlessly concealed from LS and LaCERTOSA.

130. The charging of usurious rates of interest by BLACKMAN INC. to LONE STAR, and LS constitute predicate acts of racketeering under the first cause of action, this second cause of action and the third cause of action set forth herein.

131. The enterprise acted in furtherance of its purposes through the use of harassment and intimidation of LS, LONE STAR, LaCERTOSA and  by, among other things, the making of untruthful statements which were circulated among LaCERTOSA and the staff of LS and LONE STAR, to the effect that LONE STAR and/or LS and/or LaCERTOSA owed BLACKMAN INC. $70,024.55 which was not true and was, to SCHIRANO's knowledge, false and untrue. The harassment and intimidation engaged in by SCHIRANO on behalf of the enterprise included the making of repeated telephone calls to LaCERTOSA and employees of LS and LONE STAR, referring to LaCERTOSA as "Bernie Madoff of the plumbing industry," referring to Bernard L. Madoff, who was convicted of conducting a fraudulent Ponzi Scheme, thereby attributing to LaCERTOSA the commission of felonies and other crimes.

132. By reason of the foregoing, the acts of BLACKMAN INC. and its co-conspirators constituting the

enterprise constitutes an attempt by BLACKMAN INC. to collect from LS and LaCERTOSA an unlawful debt in violation of 18 U.S.C. § 1962(c).

133. The acts of BLACKMAN INC. and its co-conspirators alleged in this complaint constitute acts of a racketeering enterprise and the commission of predicate acts of usury, extortion, intimidation, obstruction of justice, bank fraud, wire fraud and mail fraud (perpetrated via bogus invoices listed on BLACKMAN, INC's monthly statements sent to LS HOME SERVICES INC., P.O. BOX 570481, Whitestone, New York 11357-0481)) in violation of 18 U.S.C. § 1961 *et seq*.

134. The plaintiffs repeat the averments of the First Cause of Action with the same force and effect as though set forth at length herein.

135. The acts of the defendants on this complaint constitute a conspiracy to violate the provisions of 18 U.S.C. § 1962(c) and thereby constitutes a violation by all of the defendants on this complaint of 18 U.S.C. § 1962(d).

136. On or about February 23, 2009 and subsequent thereto to on or about April of 2009, SCHIRANO called LaCERTOSA's voice mail and home answering machine and left several (between 10-15) threatening, hostile and vulgar messages on them for the purpose of intimidating and extorting LONE STAR, LS, LaCERTOSA and HEATSERVE . The messages were defamatory in nature and in attempts to collect an unlawful debt in the Blackman Enterprise, in that they attributed to LaCERTOSA the commission of criminal acts through the reference to LaCERTOSA as "Bernie Madoff of the plumbing industry," referring to Bernard L. Madoff, a felon convicted of the fraudulent conduct of a Ponzi Scheme, in nature and false and were published to a third party when LaCERTOSA's secretary, as well as various other people who work in the LS office, received and listened to them. The foregoing acts constituted a predicate act of extortion and conspiracy to commit thereof  to the business of LONE STAR, LS and LaCERTOSA.  The aforementioned criminal act described herein is in violation of the Hobbs Act, codified 18 U.S.C. § 1951(a)  Interference with Commerce by threats or violence, which stipulates  " Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years. " 18 U.S.C. § 1951(b) (2) defines Extortion as "the obtaining of property from another,

with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.  The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

137. On or about October 27, 2007, and prior thereto, SCHIRANO was known to BLACKMAN INC. to be aggressive and to possess a ferocious nature and disposition in his actions with respect to generating revenue for BLACKMAN INC. from customers who owed money to BLACKMAN INC. The aforementioned criminal act herein described is in violation of 18. U.S.C. § 2701 (a). Unlawful access to stored communications, which stipulates  whoever--(1)"intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility;and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." The aforementioned criminal act described herein constitutes a  predicate act and pattern of racketeering activity and conspiracy to commit thereof as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c). The aforementioned criminal act described herein is in violation of the Hobbs Act and conspiracy to commit thereof, codified 18 U.S.C. § 1951(a), Interference with Commerce by threats or violence, which stipulates  " Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years. " 18 U.S.C. § 1951(b) (2) defines Extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. Said fax was sent via wire and is an overt criminal act by BEDFORD constitutes wire fraud and conspiracy to commit  wire fraud in violation of 18 U.S.C. §1343. constitutes a pattern of racketeering activity as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1343 Fraud by wire, radio, or television stipulates "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television

communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."  The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

138. On or about October 27, 2007 and prior thereto, SCHIRANO had displayed vicious propensities when undertaking the task of collecting money from BLACKMAN INC. customers who were indebted to plaintiff. Among the statements made by SCHIRANO, were threats to communicate with other suppliers "to see if LONE STAR is putting the screws to them," and to call other plumbing suppliers and tell them that LONE STAR, LS, LaCERTOSA and "passing bad checks," or words to such effect. The aforementioned criminal act herein described is in violation of 18. U.S.C. § 2701 (a). Unlawful access to stored communications, which stipulates whoever--(1)"intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility;and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system."  The aforementioned criminal act described herein constitutes a predicate act and a pattern of racketeering activity of the Blackman Enterprise as defined in 18 U.S.C. §1961 (5) and in violation of the 18 U.S.C. §1961-1964 of the Racketeer Influenced and Corrupt Organizations Act in collection of an unlawful debt affecting interstate commerce pursuant 18 U.S.C. §1961 (a), (b), (c).

**AS AND FOR A FIRST CAUSE OF ACTION UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(a) ON BEHALF OF THE PLAINTIFFS LS HOME SERVICES INC, LONE STAR HOME HEATING, INC., ASSURED MECHANICAL SERVICE CORP., HEATSERVE, and JOHN LaCERTOSA**

Plaintiffs repeat the averments of paragraphs 1-138 with the same force and effect as though set forth at length herein. The above named defendant's acted with criminal intent and received income from a pattern of racketeering activity and committed criminal predicate acts to collect an unlawful debt against the plaintiffs. The unlawful income received by all of the defendants was invested in an enterprise, herein referred to as the "Blackman enterprise". The Blackman enterprise bears a nexus to interstate or foreign commerce that resulted in injury to the plaintiff's business by reason of the

defendant's use and investment of the income in the enterprise.  As a direct and proximate result of the repeated and ongoing racketeering acts alleged herein, Plaintiffs have been injured by those acts engaged in heretofore by the enterprise and , and their ability to continue in business now and hereafter.


**AS AND FOR A SECOND CAUSE OF ACTION UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(b) ON BEHALF OF THE PLAINTIFFS LS HOME SERVICES INC, LONE STAR HOME HEATING, INC., ASSURED MECHANICAL SERVICE CORP., HEATSERVE, and JOHN LaCERTOSA**

Plaintiffs repeat the averments of paragraphs 1 -138 with the same force and effect as though set forth at length herein. The defendant's acted with criminal intent through a pattern of racketeering activity and through illegal activities to collect an unlawful debts acquired and maintained an interest or control of an enterprise which was engaged in or affecting interstate or foreign commerce that resulted in injury to the plaintiff's business by reason of the defendant's acquisition or maintained of the interest in, or control over, the enterprise


**AS AND FOR A THIRD CAUSE OF ACTION UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(c) ON BEHALF OF THE PLAINTIFFS LS HOME SERVICES INC, LONE STAR HOME HEATING INC., ASSURED MECHANICAL SERVICE CORP., HEATSERVE, and JOHN LaCERTOSA**

Plaintiffs repeat the averments of paragraphs 1-138 with the same force and effect as though set forth at length herein. The defendant's, who were employed by or associated with an enterprise that engaged in or affects interstate or foreign commerce conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity and through acts of collection of an unlawful debt while acting with intentional criminal intent resulted in injury to the plaintiff's business.


**AS AND FOR A FOURTH CAUSE OF ACTION UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(d) ON BEHALF OF THE PLAINTIFFS LS HOME SERVICES INC, LONE STAR HOME HEATING INC., ASSURED MECHANICAL SERVICE CORP., HEATSERVE, and JOHN LaCERTOSA**

Plaintiffs repeat the averments of paragraphs 1-138 with the same force and effect as though set forth at length herein. The defendant's conspired to violate sections 1962 (a), (b), and (c) for over a period of two years in order to defraud and destroy and take over plaintiff's business  and committed overt and predicate acts acts taken in furtherance of the conspiracy and formed an agreement to commit predicate

acts and had knowledge that the acts were part of a pattern of racketeering activity which caused injury to the plaintiff's business by reason of the overt acts which were predicate acts of the Blackman Enterprise.


**WHEREFORE**, the plaintiffs pray judgment against the complaint defendants for expectation damages in the amount of $7,321 278.45 and that the damages be trebled required under 18 U.S.C. 1964 ( c)  in the amount of $21, 963,835.35 and statutory reasonable attorneys fees and costs the Court deems just and proper, direct actual damages derived from all of the aforementioned predicate acts of the Blackman Enterprise consisting of total fraudulent excess charges for double, triple billing, etc., fraudulent service charges and false discounts allowed in the amount of $246, 971.49 and false adjustment charges totaling $15, 473.56 and $88,659.39 in total usury charges with a grand total of $351,104.44 and that the damages be trebled required under 18 U.S.C. 1964 (c) and statutory reasonable attorneys fees and costs in the Court deems just the amount of $1,053, 313.34; consequential damages in the amount of $1,911,341.30 consisting of actual damages from lost profits derived from the proximate causation of the pattern of racketeering of the Blackman Enterprise and that the damages be trebled required under 18 U.S.C. 1964 (c) and statutory reasonable attorneys fees and costs in the Court deems just the amount of $5,734,023.90 **;**  consequential damages in the amount consisting of actual further tax liability incurred against plaintiffs from a direct and proximate causation from the pattern of racketeering and predicate acts committed by the Blackman Enterprise in the amount $3,162,787.42  and that the damages be trebled required under 18 U.S.C. 1964 (c) and statutory reasonable attorneys fees and costs the Court deems just and proper  in the amount of $9, 488, 362.56; exemplary damages derived from defendant's obstruction of justice for filing a false and frivolous action with the NYS Supreme Court, Suffolk County for $87,530.68 to collect an unlawful debt as a predicate act and pattern of racketeering from the Blackman Enterprise and that the damages be trebled required under 18 U.S.C. 1964 (c) and statutory reasonable attorneys fees and costs in the Court deems just the amount of $262, 592.04. Based on the foregoing damages plaintiff requests respectfully damages totaling $38,502,127.19 and statutory reasonable attorneys fees and costs in the amount of $15, 400, 850.88 to a grand total of $53, 902,978.07.

Dated: February 5, 2012

    New York, NY

    /s/

_____

Richard D. Borzouye, Esq.
Attorney for the Plaintiff
(Bar Code RB 3461)
14 Wall Street, 20th Floor
New York, NY 10005
(212) 618-1469

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated:   New York, NY
         February 5, 2012